In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00102-CR


______________________________




FRANK ANDREWS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 35419-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Frank Andrews appeals from his conviction for burglary of a building. A jury convicted him
and assessed his punishment at two years' confinement in a state-jail facility. 

 He contends that the trial court erred by instructing the jury to examine the evidence of his
prior convictions before jury argument and deliberation on punishment, and that the evidence is
legally and factually insufficient to support his conviction.

 We first address the evidentiary contentions. In reviewing the legal sufficiency of the
evidence, we view all of the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

 In a factual sufficiency review, we review all the evidence, but do so in a neutral light and
determine whether the evidence supporting the verdict is so weak or is so outweighed by the great
weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly
unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 The evidence showed that computers and other business machines were stolen from the
offices of Pro Test after closing hours. Robert Walker, the owner of a janitorial company, testified
that he had waxed the floor of the Pro Test offices and left the building while it dried. He returned
later and found a maroon Ford Mustang parked outside, and also testified that he saw some computer
equipment on the ground next to the car. When he went in, he thought that perhaps someone was
working on the computers--he saw a person there, kneeling next to a desk. The person did not
respond to his greeting, and the person walked outside and drove away. As Walker made the rounds
of the office checking the wax, he saw a broken window and realized some equipment was missing. 
He telephoned the business owner, Steve Stidham, who called police. About $12,000 to $15,000
worth of equipment was taken in the burglary. None was recovered.

 Several weeks after the encounter, Walker saw and recognized the Mustang and its driver. 
He took down the license number, which was relayed to police. Walker was shown a photographic
lineup and he identified Andrews as the person who was inside Pro Test. There was also testimony
from Stidham that Andrews had briefly been an employee of Pro Test.

 Andrews contends that the evidence is insufficient because Walker did not see him in actual
possession of the office equipment and because there was nothing else to connect him to the missing
items. The items were never recovered, and there was no link to Andrews besides Walker's and
Stidham's testimony. He argues that this constitutes nothing more than mere presence, and thus guilt
has not been adequately proven. That is not, however, all that may be gleaned from the evidence. 
Items of the type stolen were seen on the ground next to the Mustang, there was no evidence of any
valid reason for Andrews to be inside the building, and the building had been broken into. Walker 
was able to identify Andrews, and the evidence shows that they were in close proximity inside the
building. 

 There was evidence that at about 2:00 a.m. on the morning of February 27, 2006, Andrews
was inside a building which had been broken into, that he left when confronted, and that items of the
type stolen were on the ground next to his automobile. The jury can draw multiple reasonable
inferences as long as each inference is supported by evidence presented at trial. The jury may not
come to conclusions based on mere speculation or factually unsupported inferences or presumptions. 
Hooper v. State, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007). Because of the time, the location,
and the proximity of Andrews to the type of items stolen, this is evidence which could have been
understood by a jury as more than mere presence at a crime scene, and from which it could
reasonably infer that Andrews had broken into the building, taken the items, and left with them. 

 The evidence is legally and factually sufficient.

 Andrews also argues that the court erred by directing the jury to examine the documentary
proof of his prior convictions before argument on punishment. The record indicates that after
closing, in the midst of discussing the jury charge, it became clear that part of the charge was
missing, and while waiting for that part to be brought in, the court allowed the panel to return to the
jury room.

 THE COURT: Folks, I'm going to let you do this: I'm going to let you go
back in the jury room. You can review those documents. Be sure you bring them out
when you come back out and we'll get this Charge going. We won't be long.


 There was no objection to this procedure, and counsel has been unable to direct us to any
authority that suggests that under these circumstances, it was necessarily error. The documents were
in evidence, and even though the jury had not previously seen them, there is no convincing
explanation made of why the jury should not have been allowed to do so before final arguments. 
Counsel suggests that this constituted a comment on the weight of the evidence, evidently based on
the fact that Andrews had not been placed on the stand to establish that the jury might have the
option of placing him on community supervision. Nevertheless, in any event, the documents were
in evidence and would have been available to the jury to review.

 Regardless of whether any error might exist, however, there was no objection to this
procedure. In the absence of a timely objection, this claim of error has not been preserved for our
review. See Tex. R. App. P. 33.1.

 We affirm the judgment.




 Bailey C. Moseley

 Justice


Date Submitted: February 20, 2008

Date Decided: February 21, 2008


Do Not Publish





SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Grid 1 Accent 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00228-CR

                                                ______________________________

 

 

                                   JOSHUA WILLIAM LAY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 354th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 26176

 

                                                           
                                       

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            Joshua William Lay did not dispute
that he tucked a nine-millimeter pistol into his pocket, pedaled his bicycle to
Darryl Dwane Feggetts
apartment, and shot Feggett four times, killing
him.  Rather, he disputed the motives for
his actions.  A jury convicted Lay of
murder and sentenced him to thirty years imprisonment.  On appeal, Lay complains that the evidence
was insufficient to establish that he intentionally or knowingly killed Feggett and contends that the trial court erred in refusing
to submit instructions to the jury concerning the lesser-included offense of
manslaughter and on self-defense.  We
affirm the judgment of the trial court because we find the evidence sufficient
to establish the requisite mens rea for murder, hold the inclusion of manslaughter as a
lesser-included offense was unwarranted, and conclude that Lay was not entitled
to an instruction on self-defense.  

I.          Sufficient
Evidence Established that Lay Intentionally or Knowingly Killed Feggett

            A.        Standard of Review

            In reviewing the legal sufficiency
of the evidence, we review all the evidence in the light most favorable to the
jurys verdict to determine whether any rational jury could have found the
essential elements of murder beyond a reasonable doubt.  Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (414 decision)
(citing Jackson v. Virginia, 443 U.S.
307, 319 (1979)); Hartsfield v. State,
305 S.W.3d 859, 863 (Tex. App.Texarkana 2010, pet. refd)
(citing Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007)).  Our
rigorous legal sufficiency review focuses on the quality of the evidence
presented.  Brooks, 323 S.W.3d at 91718 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson,
443 U.S. at 31819).

            Legal sufficiency of the evidence is
measured by the elements of the offense as defined by a hypothetically correct
jury charge.  Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically correct jury charge sets
out the law, is authorized by the indictment, does not unnecessarily increase
the States burden of proof or unnecessarily restrict the States theories of
liability, and adequately describes the particular offense for which the
defendant was tried.  Id. 
In this case, Lay committed murder if he intentionally or knowingly
caused Feggetts death.  Tex.
Penal Code Ann. § 19.02(b)(1)
(West 2011).

            B.        The Record

            Feggetts
neighbor at the Greentree apartment complex, Juan
Davis, witnessed Feggett, Feggetts
girlfriend, and Lay laughing and joking outside the convenience store.  Lay had just met Feggett
and felt that they could be friends.  Lay
accepted an invitation from Feggett to attend a
cookout at Feggetts apartment and gave Feggett a $100.00 bill to pay for groceries for the
cookout.  Feggett
and his girlfriend went to Wal-Mart to purchase groceries and instructed Lay to
meet them at their apartment.  

            When Lay went to Feggetts
apartment to attend the cookout, he discovered that Feggett
had liedthere was no cookout to attend. 
Incensed, Lay demanded the return of his money.  Feggett (who,
unbeknownst to Lay, was a drug addict) refused to return the money, became
belligerent, held a knife to Lays throat, and demanded that Lay leave. 

            Davis was socializing that evening
with his neighbor, Quenten Mays, on the Greentree apartment grounds when they witnessed a mad,
irritated Lay exit Feggetts apartment.  Lay told Davis, Im going to kill him, said
to Mays that somebodys going to die, and then took off on his bike.  Apartment resident Andre Smith spoke with Feggett afterward and related that  Feggett was pretty
upset, like he was scared for his life. 
Smith also told the jury that Feggett had
said, Im being threatened.  Somebodys
going to hurt me.  

            Lay angrily pedaled back to his
rental home.  He stewed over the
altercation, grabbed his friends gun, rode his bicycle back to Feggetts apartment, and confronted him about the previous
argument and the theft of his money.  Lay
said that he just wanted to make [Feggett] feel how
I felt.  Lay offered the explanation
that he became afraid when Feggett walked toward him
and reached in his pocket, whereupon Lay drew the pistol, shot Feggett, and ran.  Lay
admitted that Feggett had no weapon in his hands at
the time he was shot. 

            Davis heard gunshots at the
apartment complex and Smith witnessed the shooting.  Smith testified that Feggett
did not have a knife and did not move toward Feggett
before the shooting began.  According to
Smith, the two were just talking when Feggett was
shot.  Davis ran toward the commotion and
saw [Lay] cutting across the top balcony going down the stairs.  Mays witnessed Lay running across the
parking lot.  Davis held [Feggett] as he took his last breaths.  

            Officer Phillip Spencer received a
tip as to the location of Lays home and found him asleep in his bedroom.  A consensual search of the home revealed an
empty 9 millimeter pistol box and a box of 9 millimeter rounds missing a few
rounds from the box.  The pistol was
found hidden in the attic, and a bicycle matching the description given by
witnesses was located in the garage.  Lay
was taken to the police department for questioning. 

            Detective Felicia White, who
interviewed Lay testified:

to
my understanding . . . they had a confrontation earlier, . . . the victim had
drawn a knife on him.  They had an
altercation.  The Defendant left the
area, rode home to Anderson Street, got a gun, came back to Greentree
Apartments, confronted the victim and said that he wanted him to make him feel
like he did.  

 

            C.        Analysis 

            Lay contends that the evidence was insufficient
to establish the intentional or knowing mens rea element of murder. 
A person acts intentionally, or with intent, with respect to the nature
of his conduct or to a result of his conduct when it is his conscious objective
or desire to engage in the conduct or cause the result.  Tex.
Penal Code Ann. § 6.03(a) (West 2011). 
Whether Lay possessed the intent to kill was a question of fact for the
jury to determine.  Brown v. State, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003).  In determining whether intent to kill was
proven, the jury can use its collective common sense and may apply common
knowledge and experience.  See Rodriguez v. State, 90 S.W.3d 340,
355 (Tex. App.El Paso 2001, pet. refd).  The jury may infer the intent to kill from
any evidence that it believes proves the existence of that intent.  Brown,
122 S.W.3d at 800.  Intent can be
inferred from such circumstantial evidence as the persons acts, words, and
conduct because [o]nes acts are generally reliable
circumstantial evidence of ones intent.  Laster v. State,
275 S.W.3d 512, 524 (Tex. Crim. App. 2009); Guevara
v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).  The jury may also infer intent to kill from
the defendants use of a deadly weapon, such as a gun, unless it would be
unreasonable to infer that death or serious bodily injury could result from the
particular use of the weapon.  Brown, 122 S.W.3d at 80001; Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996). 

            The jury heard that Lay became angry
at Feggett. 
Davis and Mays both testified that Lay said he was going to kill Feggett.  Lay pedaled
a bicycle to his home, retrieved a gun, and returned on the bicycle to Feggetts apartment, maintaining that his intention was to
make Feggett feel how he had made Lay feel when Feggett had placed a knife at his throat.  Smith testified the two were just talking
when Lay drew his deadly weapon and shot Feggett.  Lay ran after the shooting and hid the pistol
in his attic.  

            Viewing the evidence in a light most
favorable to the verdict, we find that a rational jury could have found beyond
a reasonable doubt that Lay intentionally or knowingly killed Feggett. We overrule Lays legal sufficiency
challenge.  

II.        Trial Court Was Not Required to Submit Manslaughter as a
Lesser-Included Offense

 

            Lay argues that the trial court
erred in denying his request to include manslaughter in the jury charge as a
lesser-included offense.  The Texas Court
of Criminal Appeals has implemented a two-prong test to determine whether a
charge on a lesser-included offense should be given.  McKinney
v. State, 207 S.W.3d 366, 370 (Tex. Crim. App. 2006).  A party is entitled to such a charge when (1)
the offense is a lesser-included offense of the offense charged in the
indictment, and (2) the record includes some evidence to permit a rational jury
to find that if the defendant was guilty, he was guilty only of the lesser
offense, but not guilty of the greater.  Id.; Guzman
v. State, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006); Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Wesbrook v. State, 29 S.W.3d 103, 113 (Tex.
Crim. App. 2000).  Manslaughter is a type
of homicide which requires the perpetrator to possess a reckless state of mind
which prompts the prohibited act.  Tex. Penal Code Ann. § 19.04 (West
2011).  A person acts recklessly when he is
aware of, but consciously disregards, a substantial and unjustifiable risk.  Tex.
Penal Code Ann. § 6.03(c) (West 2011).  Manslaughter is a
lesser-included offense of murder.  Moore v. State, 969 S.W.2d 4, 9 (Tex.
Crim. App. 1998); see Tex. Code Crim. Proc. Ann. art.
37.09(3) (West 2006).  Thus, we focus on
the second prong of the test. 

            Lay argues that he did not have the
intention to kill Feggett, but that he only wanted
to obtain an apology from Feggett, and wanted him to
feel what it felt like to be threatened with a deadly weapon.[1]  This is the sole evidence that it was not
Lays intention to kill Feggett.  [T]he act of pointing a loaded gun at someone
and shooting it toward that person at close range demonstrates an intent to
kill.  Ex parte Thompson, 179 S.W.3d 549, 556 n.18 (Tex. Crim. App. 2005).
 Lay was indicted and tried for using a
firearm to slay Feggett.  A firearm is a deadly weapon per se.  Stewart
v. State, 532 S.W.2d 349, 350 (Tex. Crim. App. 1976).  When a deadly weapon per se is used in a
deadly manner and death results, there is no need to give a charge of a lesser-included
offense even though the defendant testified he did not intend to kill the
victim. Womble v. State, 618 S.W.2d 59, 65 (Tex. Crim.
App. [Panel Op.] 1981) (defendant not entitled to charge on aggravated assault
as lesser-included offense).  Lays
denial that he intended to kill the victim does not, of itself, raise the
issue of manslaughter.  Munoz v. State, 932 S.W.2d 242, 245
(Tex. App.Texarkana 1996, no pet.).  To
raise the issue of manslaughter, there must be evidence of a lack of intent to
kill and evidence that [the
defendant] acted recklessly while ignoring a known risk.  Id. 

            We do not believe there is evidence
that Lay acted recklessly while ignoring a known risk.  Lay left Feggetts
residence, rode his bicycle to his own neighborhood where he obtained a gun,
returned to Feggetts home, aimed the gun at Feggett, and shot him four times.  This is not evidence of reckless behavior.  Moreover, the statements that Lay made to
Davis and Mays, together with Lays admission that Feggett
had no weapon in his hands at the time he was shot, remained uncontested.  The physical evidence shows that Feggett was shot four times from close range with one of
the four bullets striking his forehead. 
The evidence shows a deliberate and voluntary act, and there is no
dispute that when Lay drew the weapon, he intended to use it.  Lays testimony that he did not intend to kill
contained no evidence of a reckless state of mind and there was no other
evidence of that mindset.  Therefore, we
find there was no evidence in the record from which a rational trier of fact could determine that Lay was guilty only of
manslaughter.  

            We overrule this point of error. 

III.       Lay
Was Not Entitled to an Instruction on Self-Defense

            Lay complains that the trial court
erred in refusing to instruct the jury on the issue of self-defense.  After relating the facts of the shooting,
White testified, I dont think thats self-defense, and told the jury that
Lay was unlawfully carrying a weapon.  

            Under Section 9.31 of the Texas
Penal Code, a person is justified in using force against another when and to
the degree [he] reasonably believes the force is immediately necessary to
protect [himself] against the others use or attempted use of unlawful force.  Tex.
Penal Code Ann. § 9.31(a) (West
2011).  But [t]he use of force against
another is not justified . . . if the actor sought an explanation from or
discussion with the other person concerning the actors differences with the
other person while the actor was unlawfully carrying a weapon under Section
46.02.  Tex.
Penal Code Ann. § 9.31(b)(5)(A)
(West 2011).  A person commits an
offense if the person intentionally, knowingly, or recklessly carries on or
about his or her person a handgun . . . if the person is not:  (1) on the persons own premises or premises
under the persons control.  Tex. Penal
Code Ann. § 46.02(a)(1) (West Supp. 2011).  

            A defendant bears the burden of
production of some evidence supporting the justification of self-defense.  Zuliani v. State,
97 S.W.3d 589, 594 (Tex. Crim. App. 2003); Saxton
v. State, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991); Dyson v. State, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).  Once a defensive issue is raised by the
evidence, a defendant has the right to an instruction . . . whether
that evidence is weak or strong, unimpeached or
contradicted, and regardless of what the trial court may or may not think about
the credibility of the defense.  Hamel v. State, 916 S.W.2d 491, 493
(Tex. Crim. App. 1996).

            In his video-recorded interview with
White, Lay recounted the prior altercation in which Feggett
threatened Lay by placing a knife at his throat.  Lay stated that he became afraid for his life
and only drew his gun during the final altercation after Feggett
gave him a crazed look, came toward him, and reached in his pocket.  A folding lock-blade knife less than three
inches long was recovered from Feggetts pocket by
officers after his death.  Lay described Feggetts demeanor as violent.  Feggett was known
to have a problem with drugs.  He was
also previously involved in disturbances in family violence-type situations.  His autopsy revealed the presence of cocaine
and a blood alcohol level of .12.  The
defendants testimony alone may be sufficient to raise a defensive theory
requiring a charge.  Dyson, 672 S.W.2d at 463.  Also, Smith testified he had seen Feggett pacing angrily while saying f this and Im
going to go hurt somebody.

            However, when the evidence, viewed
in the light most favorable to the defendant, establishes as a matter of law
that force is not justified in self-defense, no self-defense issue is
required.  Ferrel v. State, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); Weatherall v. State, No. 06-09-00095-CR, 2009
WL 3349039, at *2 (Tex. App.Texarkana Oct. 20, 2009, no pet.) (mem. op., not designated for publication);[2] Williams v. State, 35 S.W.3d 783, 786 (Tex. App.Beaumont 2001,
pet. refd) (citing Dyson, 672 S.W.2d at 46465). 


            The undisputed evidence was that after the
first altercation, Lay returned to his home, took possession of his friends
gun, returned to Feggetts apartment complex, and
confronted Feggett, seeking to convince [Feggett] to acknowledge wrongdoing in swindling money from
him.  Because Lay sought a discussion
concerning his differences with Feggett while
carrying his friends gun upon the apartment complex premises in violation of
Section 46.02 of the Texas Penal Code, he was not entitled to an instruction on
the issue of self-defense as a matter of law. 
Therefore, the trial court did not err in refusing to include the
instruction. 

            Lays last point of error is
overruled.  

IV.       Conclusion


            We affirm the trial courts
judgment. 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          December 9, 2011

Date
Decided:             January 24, 2012

 

Publish 

 











[1]Lay
also argues that the following facts also indicate reckless, rather than
intentional or knowing acts:  Lay closed
his eyes, did not use a high-powered weapon, and was easily identifiable from
tattoos and the unique bicycle he rode. 
He states that a person who commits a murder might practice using the
weapon, use accomplices, shoot witnesses, and have a motorized vehicle
available for a quick and inconspicuous escape, or steal one.  These facts do not indicate reckless, as
opposed to intentional or knowing acts. 
Rather, they simply emphasize that the murder was not committed by a
stealthy criminal. 





[2]Although
this unpublished case has no precedential value, we may take guidance from it as
an aid in developing reasoning that may be employed.  Carrillo
v. State, 98 S.W.3d 789, 794 (Tex. App.Amarillo 2003, pet. refd).