**Rodolfo MUNOZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–95–00175–CR.

Court of Appeals of Texas,
Texarkana.

Sept. 23, 1996.

R. Kent Phillips, Longview, for Appellant.

Ebb B. Mobley, Longview, for Appellee.

Before CORNELIUS, C.J., and GRANT and CHADICK (Retired), JJ.

OPINION

CORNELIUS, Chief Justice.

Rodolfo Munoz was convicted of murder. The jury set his punishment at forty-eight years' imprisonment. On appeal Munoz does not challenge the sufficiency of the evidence, but he contends that he should have a new trial because the trial court erroneously admitted in evidence a tape and a transcript of a 911 emergency call, and erroneously refused to submit jury instructions on manslaughter and criminally negligent homicide. We reject these contentions and affirm the judgment.

On August 22, 1994, Munoz and several other workers were laying the foundation for a home in north Longview. Problems arose with the project, and Munoz canceled work for the day. He and several workers went to lunch, where Munoz drank two or three beers. After lunch, Munoz and the workers went to the Executive Club, where they stayed from about 2:00 to 9:30 p.m. Munoz had eight or nine beers there and was asked to leave after he argued with a waitress. Munoz and Joseph Behre, one of the workers, then went to another club, Morelo's, where Munoz had two beers. Carmen Navarro, a Morelo's employee, testified that Munoz became upset when two "drag queens" entered the bar, but no violence occurred. She also testified that Munoz was not intoxicated, but that he fell off his stool and spilled his drink. Vickie Perez, a Morelo's waitress, testified that she danced with Munoz two or three times and that he did not seem intoxicated. Munoz and Behre left Morelo's and went across the street to the Ocean Club. They entered the club, and Munoz ordered a beer. Roy Warlick, a regular customer, entered and sat to Munoz's right at the bar. They engaged in a brief conversation. Munoz suddenly pulled a gun from his pants and shot the bartender, David Joyner, as Joyner was looking down. No one testified that there had been any arguments or threats. David Ronzello, the bar owner, testified that Munoz said something like, "Are you afraid of me? Are you afraid of this?" as he produced the pistol and shot

Joyner. After the shooting, Warlick ran from the bar. Munoz walked out, with Behre following. Behre said Munoz walked to the vehicle where Warlick was sitting and pointed his gun at him. Behre asked Munoz not to shoot, and Warlick left. Behre drove Munoz home and left him passed out in his vehicle. Munoz testified at trial. He said he did not remember anything that happened at the bar where the shooting occurred, and did not remember even being there, but he denied having any intent to kill Joyner.

■ Munoz first contends that the trial court erred in admitting into evidence a tape recording and a written transcript of a 911 emergency call. On the tape, the caller, Aaron Lewark, tells the dispatcher that Joyner has been shot. Lewark describes Joyner's injury, and the dispatcher tries to get Lewark to administer first aid to the victim. The dispatcher several times tells Lewark to calm down. The State introduced the tape recording and the transcript. The transcript was not admitted into evidence but was to aid jurors as they listened to the tape. Munoz objected on grounds that the tape and the transcript contained hearsay, Tex.R.Crim. Evid. 802; were irrelevant, Tex.R.Crim. Evid. 401; and that the danger of unfair prejudice substantially outweighed their probative value, Tex.R.Crim. Evid. 403. The court overruled the objections.

■ A trial court may exclude relevant evidence if the danger of unfair prejudice outweighs its probative value. TEX.R.CRIM. EVID. 403. The presumption is that the evidence's probativeness outweighs its prejudicial effect unless the trial court determines otherwise. *Montgomery v. State,* 810 S.W.2d 372, 388 (Tex.Crim.App.1990) (opinion on rehearing). The trial court should favor admission in close cases. *Id.* at 389. The reviewing court must uphold the trial court's ruling on appeal unless the ruling constitutes an abuse of discretion. *Id.* at 391.

Munoz argues the tape and transcript have little probative weight compared to their prejudicial impact because the only relevant matter the State could show was that Munoz shot Joyner. The State produced several eyewitnesses who identified Munoz as the gunman, and a forensic pathologist testified

that a gunshot killed the victim. Munoz contends the tape and the transcript added nothing to this evidence, whereas the caller's description of the victim's wound and the caller's emotional reaction to the shooting were so inflammatory that the jurors could have been induced to act on emotion rather than on the evidence.

We do not find that the court abused its discretion in admitting the tape. The tape is not unduly graphic. Indeed, as far as a description of the victim's wounds, it is not as graphic or inflammatory as other evidence admitted to describe the shooting. While the caller is obviously excited and distraught while making the call, he does not display the kind of inflammatory emotion that would be calculated to cause the jurors to act on emotion rather than on the evidence. Moreover, the tape provides a framework within which the State's evidence could be developed. *See Webb v. State,* 760 S.W.2d 263 (Tex.Crim. App.1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989); *Brooks v. State,* 833 S.W.2d 302 (Tex.App.—Fort Worth 1992, pet. ref'd).

■ As concerns the jurors' use of the written transcript of the 911 call, the trial court does not err when it allows jurors to use such a transcript to follow along during the time the actual recording is played. *Moore v. State,* 882 S.W.2d 844, 846–47 (Tex. Crim.App.1994).

■ Munoz also contends that the trial court should have granted his request to submit jury instructions on the lesser included offenses of manslaughter and criminally negligent homicide.

■ A trial court must instruct the jury about a lesser included offense if (1) the proof needed to establish the charged offense includes the proof needed to establish the lesser charge and (2) the record contains some evidence that, if the defendant is guilty of any offense, he is guilty only of the lesser one. *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993) (citing *Royster v. State,* 622 S.W.2d 442 (Tex.Crim. App. [Panel Op.] 1981)). The evidence need-

ed to raise a lesser offense may come from any source, including the State's evidence, *Saunders v. State,* 840 S.W.2d 390, 391 (Tex. Crim.App.1992), or the defendant's own testimony, *Hunter v. State,* 647 S.W.2d 657, 658 (Tex.Crim.App.1983).

A person commits manslaughter if he recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.05.[1] A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk. TEX. PENAL CODE ANN. § 6.03(c) (Vernon 1994). A person commits criminally negligent homicide if he causes the death of someone by criminal negligence. Tex. Penal Code Ann. § 19.07.[2] A person acts with criminal negligence when he should be aware of a substantial and unjustifiable risk. Tex. Penal Code Ann. § 6.03(d) (Vernon 1994). The distinction between the two culpable mental states required to establish these offenses lies in whether or not the actor himself perceives the risk of harm that his conduct creates. *Moore v. State,* 574 S.W.2d 122, 123 (Tex.Crim.App. [Panel Op.] 1978). Both manslaughter, *Lugo v. State,* 667 S.W.2d 144, 146 (Tex.Crim.App.1984), and criminally negligent homicide, *Thomas v. State,* 699 S.W.2d 845, 847 (Tex.Crim.App.1985), are lesser included offenses of murder.

A pistol is a deadly weapon per se when fired at a victim at close range. The State may establish intent to commit murder by showing that the accused used a deadly weapon. In the absence of other evidence, the jurors may presume intent to kill from the use of a deadly weapon. The accused may rebut this presumption with other evidence. *Thompson v. State,* 521 S.W.2d 621, 622 (Tex.Crim.App.1974).

The evidence shows Munoz had been drinking since about noon when he entered the Ocean Club at about 11:30 p.m. and sat at the bar. He had a pistol in the front of his pants, concealed by a shirt. Warlick came into the club, sat near Munoz at the bar, and exchanged cursory greetings. Ronzello, the club owner, came over to greet Warlick and to shake his hand. After Ronzello released Warlick's hand, Munoz stood up, pointed the gun straight at the bartender, who was not looking at Munoz, and immediately shot the bartender. Ronzello testified that as Munoz produced the gun, Munoz said something to the effect of, "Are you afraid of me? Are you afraid of this?" Joyner and Munoz had not argued; the victim had made no threatening move and was looking down at the time. Munoz had been in the club for about twenty minutes. Warlick ran from the club and got into his car. Munoz slowly walked outside and walked up to the driver's side of Warlick's car with the gun in his hand.

Munoz argues that rational jurors could infer from his trial testimony that he did not intend to kill Joyner, and that Ronzello's testimony about Munoz saying, "Are you afraid of this?" suggests that Munoz wanted only to frighten Joyner. He further argues that the jurors could infer that such an act was reckless and that the lesser included offense of manslaughter was raised.

We disagree. Munoz's denial that he intended to kill the victim does not, of itself, raise the issue of manslaughter. *Stills v. State,* 492 S.W.2d 478, 479 (Tex.Crim.App. 1973); *Barr v. State,* 146 Tex.Crim. 178, 172 S.W.2d 322, 325 (1943); *Hadnot v. State,* 110 Tex.Crim. 109, 7 S.W.2d 566, 567 (1928). To raise the issue of manslaughter, there must be evidence of a lack of intent to kill *and* evidence that Munoz acted recklessly while ignoring a known risk. *See, e.g., Madrigal v. State,* 852 S.W.2d 25 (Tex.App.—Austin 1993, no pet.). We conclude that the issue of manslaughter was not raised by the evidence.

Although Munoz testified that he did not intend to kill Joyner, he clarified that testimony by saying he did not even remember being at the club, much less what he did while he was there. His statement that he did not intend to kill Joyner simply meant he did not remember doing any act designed to kill him.

---

1. Amended by Act of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3614, current version found at TEX. PENAL CODE ANN. § 19.04 (Vernon 1994).

2. Amended by Act of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3614, current version found at TEX. PENAL CODE ANN. § 19.05 (Vernon 1994).

Munoz pulled his gun out of its concealed position in his clothing, pointed it directly at Joyner from a distance of twelve to eighteen inches while Joyner was not even looking at him, and immediately shot Joyner while saying, "Are you afraid of me? Are you afraid of this?" He then slowly walked out of the bar. These facts do not constitute any evidence or proper inference that Munoz was trying to scare anyone; rather, they demonstrate a warning and an immediate carrying out of the threatened danger. If Munoz was trying to scare Joyner, he would have at least waited until Joyner looked at him before pulling the trigger. The fact that Munoz slowly walked away after the killing also belies any attempt to merely frighten Joyner. If the killing had been a tragic accident resulting from a botched scare attempt, Munoz would not have calmly fled the scene after the tragedy. Moreover, there is no testimony, either from Munoz or anyone else, that the gun went off or was discharged accidentally, or that Munoz was trying to scare anyone.

In reciting these facts, we are not weighing the weakness or strength of the testimony that allegedly raises the issue of recklessness. Rather, we are simply placing the evidence in the proper context to illustrate the inferences that may be properly drawn from it.

The evidence shows that Munoz was probably intoxicated. Intoxication, however, is not a defense. Moreover, even if he was intoxicated, the evidence shows only an intentional, although foolish and tragic, shooting, not a reckless one.

The trial court properly refused an instruction on manslaughter. Likewise, a charge on criminally negligent homicide was properly refused. From our analysis of the evidence in the preceding discussion, it can be seen that there is no evidence that Munoz acted negligently. Munoz relies on the same evidence, i.e., an attempt to frighten, for an instruction on this issue as he does for an instruction on manslaughter. But we have found that there is no evidence of an attempt to frighten or of reckless or negligent conduct.

For the reasons stated, the judgment is affirmed.