

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-328-CR

WAYNE EDGAR EDWARDS                                        APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In one point, Appellant Wayne Edgar Edwards appeals his conviction for murder, contending that the trial court erred by denying his request for jury instructions on the lesser-included offenses of criminally negligent homicide and manslaughter. We affirm.

---

[1] ... *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

When Deborah Edwards returned home from work one evening, she saw her estranged husband, Edwards, waiting nearby. Deborah stayed inside the car and called her children, who were inside the house, to tell them to lock the doors to the house. Edwards then walked up to the driver's side window and told her to roll down the window. She refused. He shot her in the face with a 9-millimeter Tech-9 semi-automatic handgun.

Later that evening, Arlington police arrested Edwards as he was on his way to turn himself in. Police found a gun inside the trunk of the vehicle he was in at the time of his arrest. Forensic tests later confirmed that it was the same gun that killed Deborah.

Edwards was indicted on alternate theories of murder. The first paragraph alleged that Edwards did "then and there intentionally or knowingly cause[d] the death of an individual, Deborah Edwards, by shooting Deborah Edwards with a deadly weapon to wit: a firearm[.]" The second paragraph alleged that Edwards did "then and there intentionally, with the intent to cause serious bodily injury to Deborah Edwards, commit an act clearly dangerous to human life, namely, shoot Deborah Edwards with a deadly weapon to wit: a firearm, which caused the death of Deborah Edwards[.]"

2

Edwards pleaded not guilty. During the trial, Arlington Police Officer Seth Archer testified to statements Edwards made while being transported to the Arlington City Jail. Officer Archer testified that Edwards told him, "I had the gun in my hand, and she wouldn't roll the window down, and the gun went bang." Officer Archer also testified that Edwards said that he had planned to kill other family members and that he knew that what he did was wrong.

At trial, the State published a video-recording of an interview taken when Edwards was in custody. During the interview, Edwards said several times that he had intended to kill his wife. He also stated that he had planned to kill her mother and sister too.

At the conclusion of the trial, Edwards requested jury instructions for the lesser-included offenses of criminally negligent homicide and manslaughter. The trial court denied his request. The court's charge presented the alternate theories of murder as authorized by the indictment, and the jury found Edwards guilty of murder and assessed punishment at ninety-nine years' confinement and a $10,000 fine.

### III. Discussion

In his sole point, Edwards contends that the trial court erred by refusing to instruct the jury on the lesser-included offenses of criminally negligent homicide and manslaughter.

A. Standard of Review

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction. *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993). First, the lesser offense must come within article 37.09 of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). "An offense is a lesser included offense if . . . it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." Tex. Code Crim. Proc. Ann. art. 37.09(3).

Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a

4

scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536. If sufficient evidence of more than one theory of the greater offense is presented to allow the jury to be charged on alternate theories, the second prong of the test is satisfied only if there is evidence that, if believed, refutes or negates every theory that elevates the offense from the lesser to the greater. *Arevalo v. State*, 970 S.W.2d 547, 549 (Tex. Crim. App. 1998).

B. Lesser-Included Offenses

Voluntary manslaughter is a lesser-included offense of murder under article 37.09(3) of the code of criminal procedure. *Moore*, 969 S.W.2d at 9; *Kennedy v. State*, 193 S.W.3d 645, 651 (Tex. App.—Fort Worth 2006, pet. ref'd). Criminally negligent homicide is also a lesser-included offense of murder, and it is a lesser-included offense of manslaughter because the two offenses differ only in that criminally negligent homicide requires a less culpable mental state. *Stadt v. State*, 182 S.W.3d 360, 364 (Tex. Crim. App. 2005); *Lugo v. State*, 667 S.W.2d 144, 147 (Tex. Crim. App. 1984).

1. Mens Rea

To be found guilty of murder, an individual must intentionally or knowingly cause the death of another or intend to cause serious bodily injury. Tex. Penal Code Ann. § 19.02(b)(1)–(2) (Vernon 2003). A person acts

5

intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). He acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

In contrast, to be found guilty of manslaughter, an individual must recklessly cause the death of an individual. *Id.* § 19.04(a). A person acts recklessly with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* § 6.03(c). For a defendant to be entitled to a jury charge on manslaughter, there must be some evidence that the defendant did not intend to kill or cause serious bodily injury and that the defendant acted recklessly while ignoring a known risk. *Kennedy*, 193 S.W.3d at 651. Courts have typically found that a manslaughter instruction is required when there is some evidence that a gun discharged accidentally or that the defendant only intended to frighten the victim. *Arnold v. State*, 234 S.W.3d 664, 672 (Tex. App.—Houston [14th Dist.] 2007, no pet.). However, a defendant's denial that he intended to kill the victim does not, of itself, raise the issue of manslaughter. *Id.*

To be found guilty of criminally negligent homicide, an individual must cause the death of an individual by criminal negligence. Tex. Penal Code Ann. § 19.05(a). A person acts with criminal negligence with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. *Id.* § 6.03(d). The key to criminal negligence is the actor's failure to perceive the risk created by his conduct. *Trujillo v. State*, 227 S.W.3d 164, 168 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). If the evidence shows that the actor's awareness was such that he perceived the risk he created, he is not entitled to a charge of criminally negligent homicide. *Id.*

2. Analysis

The record reflects that Edwards was not entitled to a lesser-included offense instruction on either manslaughter or criminally negligent homicide.

With regard to manslaughter, Edwards argues that the evidence establishes that the gun discharged accidently and that Edwards wanted only to speak with his wife and scare her.[2] Specifically, he refers to statements he

---

[2]... In support of this argument, Edwards states that the State addressed the theory that the shooting was an accident during closing arguments. However, jury arguments are not evidence; therefore, we will not consider them in our analysis. *See Hutch v. State*, 922 S.W.2d 166, 173 (Tex. Crim. App. 1996).

7

made to Officer Archer, statements he made during his videotaped interview, and testimony by the State's firearm expert in support of his contentions. However, we must evaluate this evidence in the context of the entire record. *See Moore*, 969 S.W.2d at 8.

Edwards directs us to statements he gave to Officer Archer after being arrested as support for his argument. While being taken to the Arlington City Jail, Edwards told Officer Archer that he just wanted to talk to Deborah and he "had the gun in [his] hand, and she wouldn't roll the window down, and the gun went bang." Edwards argues that this statement creates the inference that the gun discharged accidently, that he did not intend to murder Deborah, and that his intention was to speak with her. However, the simple statement "the gun went bang" says nothing about whether Edwards intentionally pulled the trigger or whether it discharged accidently. *See Arnold*, 234 S.W.3d at 671–72 (holding that defendant's testimony that "the door flung open and I felt-and the gun went off" did not create the inference that the gun accidentally discharged).

Edwards also points to his statement during his custodial interview that he did not intend to hurt his wife. This statement, however, "cannot be plucked out of the record and examined in a vacuum." *Id.* at 671–72 (quoting *Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986)). And any

8

inference that Edwards unintentionally killed his wife is negated by the context in which he made the statement in light of the rest of his interview. While describing his plan to put his wife in the trunk of his car and torture her, Edwards told the detective, "I never did intend to hurt my poor sweet wife, you hear. But she had gone too far." Other statements made in the interview make it clear that Edwards fully intended to shoot his wife:

- "I hurt somebody, . . . that's not right, but it had to be done. . . . I had to stop my wife from doing what she was doing . . . ."

- "I intended to take her and torture her. . . . I intended to go to her mother's house and kill her sister who tortured me—they hurt me for years—and her mother, eighty years old, oh, I was going to blow her brains out for what she done to me."

- "I said, 'Roll the window all the way down.' That was a [sic] order. If she had of [sic] rolled that window down, she would be alive today."

- "She didn't open the window, and I said, 'Well, you just want to die right here.' Pow! The thing went off."

- "But I did intend to kill her. I didn't . . . go not to kill her."

- "I intended to kill her."

- "I definitely had to kill her for [allegedly sexually abusing their daughters] . . . she got away with it all this time."[3]

---

[3] ... Officer Archer testified that Edwards said he believed his wife and other family members had been sexually abusing their children for many years.

9

Finally, Edwards points to testimony of the State's firearm expert, Jamie Becker, who testified that the gun's firing pin was defective so that sometimes the gun fired as a semi-automatic weapon and sometimes as a fully automatic weapon. However, Becker's testimony also establishes that whether the gun was fired in semi-automatic mode or in fully automatic mode, the trigger still had to be pulled with five to seven pounds of pressure. Nothing in this testimony indicates that Edwards did not intentionally kill his wife or that he acted with conscious disregard of a known risk. Rather, this evidence indicates that the trigger had to be pulled for the gun to discharge.

In sum, the evidence does not raise the issue of manslaughter. The evidence shows that Edwards had a plan to kidnap and torture his wife and then to kill his mother-in-law and sister-in-law. In furtherance of his plan, Edwards went to his storage unit, retrieved his gun, went to his wife's house, and waited for her to get home. When his wife arrived home, Edwards walked up to her car and told her to roll down the window. When she refused to do so, he became angry, pointed the gun at her head, and pulled the trigger with five to seven pounds of pressure. He then fled the scene of the crime. There is no evidence of a lack of intent or that Edwards acted recklessly while

Arlington Police Officer Dara DeWall testified that Edwards had made these allegations against his wife in 2001 and that the detective on the case concluded the allegations were unfounded because of a lack of evidence.

10

ignoring a known risk; rather the evidence shows a deliberate and voluntary act. In light of the entire record, Edwards's isolated statements do not constitute evidence upon which a jury could rationally find that Edwards was guilty only of manslaughter. *See Arnold*, 234 S.W.3d at 671–73 (holding that defendant's isolated statements that he was not aiming at the victim and did not intend to kill him did not raise the issue of manslaughter where defendant also testified that he meant to shoot the victim); *Munoz v. State*, 932 S.W.2d 242, 245–46 (Tex. App.—Texarkana 1996, no pet.) (holding that defendant's testimony that he did not remember shooting the victim but did not intend to kill him did not raise the issue of manslaughter); *Johnson v. State*, 915 S.W.2d 653, 659 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (holding that defendant's statement that he did not intend to kill the victim did not raise the issue of manslaughter when the defendant also testified that he shot the victim in self-defense). We overrule this portion of Edwards's sole point.

The same evidence shows that Edwards was not entitled to an instruction on criminally negligent homicide, because it conclusively shows that he clearly perceived the risk posed by pointing the handgun at his wife. *See Trujillo*, 227 S.W.3d at 168. That is, Edwards owned the gun, indicating familiarity with it. He knew the gun was loaded. He retrieved it as part of a plan to kidnap and torture his wife. He used the gun to try to coerce his wife into rolling down the

11

window.  Because there is no evidence in the record to show that Edwards failed to perceive the risk created by his conduct, and all the evidence indicates that he did perceive that risk, the trial court did not err by refusing to give an instruction on criminally negligent homicide.  *See Thomas v. State*, 699 S.W.2d 845, 850 (Tex. Crim. App. 1985) (holding that evidence that a defendant knows a gun is loaded, that he is familiar with guns and their potential for injury, and that he points a gun at another indicates that he is aware of the risk created by that conduct and disregards the risk); *Jackson v. State*, 248 S.W.3d 369, 373 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding that using a gun appellant knew to be loaded as a means to coerce an individual into paying back money indicated that appellant perceived the risk posed by drawing the weapon and chose to disregard that risk); *Trujillo*, 227 S.W.3d at 168 (holding that brandishing a loaded gun to frighten people indicates awareness of a risk posed by a loaded gun).  We overrule the remainder of Edwards's sole point.

## IV. Conclusion

Having overruled Edwards's sole point of error, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 7, 2010