**Affirmed; Opinion Filed January 28, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00842-CR

### COURTLAND WAYNE KING, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 291st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F11-59371-U

## MEMORANDUM OPINION

Before Justices FitzGerald, Lang, and Lewis
Opinion by Justice Lang

Following a plea of not guilty, appellant Courtland Wayne King was convicted by a jury

of capital murder. Punishment was assessed by the trial judge at life imprisonment.

Appellant asserts two issues on appeal. Specifically, appellant contends the trial court

erred (1) because the evidence is legally insufficient for a rational trier of fact to conclude

beyond a reasonable doubt that appellant committed the offense of capital murder, and (2)

because the trial court denied appellant's request to submit to the jury the lesser included charge

of manslaughter.

For the reasons below, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The testimony at trial shows that on August 31, 2011, appellant pushed his way through a door that provided access to the restricted teller area of a Bank of America branch. Two Bank employees, Luciana Sifflet[1] and Priscilla Lopez, were standing by the door conversing when appellant pushed into the restricted area. Appellant was not wearing a disguise on his face, nor was he carrying a weapon. He did not present a note demanding money, nor did he orally threaten the Bank employees with violence. Sifflet testified she and Lopez believed at first appellant was searching for a restroom and told him to leave the area.

Appellant appeared to be in a hurry as though he was searching for something. Sifflet recalled appellant was sweating and told detectives he appeared mentally ill or under the influence of drugs. Lopez testified appellant had a glazed look in his eyes, and she thought he was "crazy" or from a "mental house."

Also, Sifflet recalled appellant then asking, "Where is the money?," although she told detectives on the day of the robbery that appellant said nothing. Lopez also testified she heard appellant say something like, "Where is the money?," though she could not recall his exact words.

Sifflet then instructed the other tellers in the restricted area to lock their teller drawers, and instructed both the tellers and customers to get out of the building. After the Bank was evacuated, Sifflet returned, observing appellant still in the restricted area, walking back and forth and attempting to open the teller drawers. Sifflet called 911.

As she left the building, Lopez informed the Bank's security guard Lionel Newell they were being robbed. Newell then entered the Bank, communicating with 911 on his cell phone.

---

[1] The last name of this Bank of America employee and witness to the homicide is spelled "Sifflot" in the clerk's record and the parties' briefs, but is spelled "Sifflet" in the reporter's record. We refer to this individual as "Sifflet" in this opinion.

After Newell entered the Bank, appellant opened the door from the restricted area and rushed towards Newell. A recording of the 911 call made by Newell was played during trial. Newell can be heard saying, "Stay, stay, stay inside, man. And don't move." Sifflet testified Newell attempted to push appellant away from him. However, appellant punched Newell with his right hand and attempted several times to grab Newell's gun with his left hand. Appellant concedes in his brief Newell did not point his gun at appellant.

Appellant and Newell continued to push each other until both were outside of the Bank's main doors. Sifflet heard a gunshot. Then, Sifflet put the phone receiver down, ran to the main door, and saw appellant and Newell continuing to scuffle. Appellant gained control of the gun and held it in his hand. Sifflet then saw appellant shoot at Newell twice. The first shot hit Newell in the back, and the second shot missed. Appellant then looked back towards the Bank by the door where Sifflet was standing, and shot at the door, breaking the glass. However, Sifflet was not injured. At this point, Sifflet returned to pick up the phone, resuming her 911 call, and informed the operator that a security guard had been shot. Lopez testified after she heard a number of shots she saw appellant run away from the Bank.

Senior Corporal Brandon Thompson of the Dallas Police Department responded to a radio call that day concerning a panic alarm or robbery call from the Bank. The call described the suspect and the direction in which he was last seen running. Heading in that direction, Thompson observed a Hispanic male doing lawn work at a church near the Bank. The man motioned to Thompson by pointing towards the back of the church. Thompson then observed appellant running from the back of the church and saw appellant throw something away. Thompson detained appellant and placed him in handcuffs.

Another officer searched appellant and observed a Bank of America lanyard with keys around his neck. Thompson later confirmed this lanyard belonged to one of the Bank's employees.

Appellant told the officer searching him, "I killed him, or I'll kill you" and made vulgar remarks to her. After being placed in the back of a police car, appellant began kicking and screaming.

Once appellant was placed in the car, Thompson returned to the location where he first placed appellant under arrest and found a handle grip of a pistol. Another officer located a handgun behind the fence on a property near the church. It was a silver .357 revolver with a missing handle.

Forensic examiners tested samples of material on appellant's hands and concluded the samples were consistent with gunshot residue. They found no gunshot residue particles on the samples collected from Newell. DNA obtained from the grip of the pistol excluded Newell as a contributor to the DNA sample.

Appellant presented evidence at trial he contends shows his "confused state of mind," suggesting he was under the influence of PCP at the time of the robbery. A clerk at a local tobacco store testified, earlier that morning, appellant purchased a "sherm stick" (a single cigarette without a filter), which is often used to smoke PCP. Appellant's girlfriend, Melody Cracraft, observed appellant was acting normal at 7 A.M. on the morning of August 31, 2011, but testified he began "acting erratic" a short time later.

Appellant's neighbor testified appellant approached him between 9 and 11 A.M. that day. Appellant was naked and held a Bible. Appellant asked the neighbor if he would marry appellant and "his lady" in the "Garden of Eden," apparently making a reference to the neighbor's flowery yard. Appellant returned home after speaking with the neighbor. Cracraft

said appellant then dressed, putting on a soaking wet shirt Cracraft had hung up to dry on their bedroom door. As he dressed, Cracraft recalled appellant was mumbling in what she called "baby talk." Appellant then left his house.

Immediately before the alleged robbery, appellant approached an elderly woman in the Bank, saying to her, "hello mama," and gave the woman a hug. The woman recalled appellant was "talking funny," and she was unsure if he was "loaded," or under the influence of drugs.

After the alleged robbery, a witness working on an air conditioning unit at a church near the Bank observed appellant approach the church to talk to the church pastor. Appellant then went inside the church and grabbed the keys to the pastor's car. However, instead of getting into the pastor's car, appellant tried to start the air conditioner worker's truck and, when the keys wouldn't fit, yelled, "Where is the keys?" Appellant then ran in and out of the church before being stopped by police. While he was being arrested, appellant repeatedly said he needed to get away and "they were gonna kill him."

Appellant pled not guilty to the indictment. After the evidence was closed, appellant requested the trial court include in the jury charge the lesser included offense of manslaughter, based upon the fact that the surveillance video showed a struggle between Newell and appellant. The trial court refused, stating there was "no evidence" to support a manslaughter charge, but that a lesser charge of murder would be included in the jury charge.

The jury found appellant guilty of the offense of capital murder, and the trial judge sentenced him to life imprisonment. Appellant filed a motion for new trial, perfected his notice of appeal, and the trial court signed the certification of appellant's right to appeal.

Appellant asserts two issues on appeal. Specifically, appellant contends the trial court erred (1) because the evidence is legally insufficient for a rational trier of fact to conclude

beyond a reasonable doubt that appellant committed the offense of capital murder, and (2) because the trial court denied appellant's request for the lesser included charge of manslaughter.

## II. LEGAL SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

When a defendant argues the evidence is legally insufficient to support his conviction, the reviewing court must consider all the evidence in the light most favorable to the verdict and "determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A reviewing court cannot "become a thirteenth juror," nor can it "re-evaluate the weight and credibility of the record evidence" and "substitute [its] judgment for that of the fact-finder." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)). Where the record supports conflicting inferences, we must presume that the jury resolved these conflicts in favor of the verdict, and we defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. at 326).

In a legal sufficiency analysis, elements of an offense "are defined by [a] hypothetically correct jury charge." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). This charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

### B. Applicable Law

A person commits murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to

human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1)-(2). A person commits capital murder if he "intentionally commits the murder in the course of committing or attempting to commit...robbery." TEX. PENAL CODE ANN. § 19.03(a)(2). Finally, a person commits manslaughter "if he recklessly causes the death of an individual." TEX. PENAL CODE ANN. § 19.04(a). The Texas Penal Code states:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c).

## C. Application of the Law to the Facts

In his first issue, appellant argues the evidence was legally insufficient to support his conviction for capital murder. As to this issue, appellant argues first the evidence is legally insufficient because of conflicts in the record that show evidence of appellant's "intent to commit robbery of the bank [was] at best weak." However, "[w]hen the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to their determination." *See Merritt*, 368 S.W.3d at 525-26. Giving proper deference to the jury's verdict, this argument cannot be sustained.

As to the first issue, appellant contends also the language in the indictment is inconsistent with the language in the jury charge. The relevant portion of the indictment in this case alleged appellant did

> unlawfully...and intentionally cause the death of LIONEL NEWELL, an individual, hereinafter called the deceased, by SHOOTING THE DECEASED WITH A FIREARM, A DEADLY WEAPON, and [appellant] was then and there in the course of committing and attempting to commit the offense of ROBBERY of said deceased.

(emphasis in original). The relevant portion of the charge instructed the jury to find appellant guilty of capital murder if they found appellant

> intentionally caused the death of Lionel Newell, an individual, hereinafter called the deceased, by shooting the deceased with a firearm, a deadly weapon, and the defendant was in the course of committing or attempting to commit the offense of Robbery.

Appellant contends a hypothetically correct jury charge would have tracked the language of the indictment, requiring the State to prove beyond a reasonable doubt that appellant intentionally caused Newell's death while in the course of committing or attempting to commit the robbery *of Newell*.

We cannot agree the noted difference between the indictment and the jury charge is error. Texas pleading rules permit ownership to be alleged in either the actual owner or special owner of property. *Byrd v. State*, 336 S.W.3d 242, 251-52 (Tex. Crim. App. 2011). When a corporation owns property that has been stolen, "it is proper to allege a natural person, who acts for the...corporation, is the owner of the property." *Sowders v. State*, 693 S.W.2d 448, 451 (Tex. Crim. App. 1985) (en banc). According to the Court of Criminal Appeals, a security guard hired to protect property and keep it from being stolen had a greater right of possession to that property by reason of his employment than the alleged thief. *Johnson v. State*, 606 S.W.2d 894, 896 (Tex. Crim. App. 1980); *see also Inman v. State*, 650 S.W.2d 417, 419 (Tex. Crim. App. 1983) (en banc) (finding security guard was special owner of stolen property by virtue of his employment because he had "actual care, custody, control or management" of the property as given in the

Penal Code definition of "possession"). This court has extended this principle to part-time undercover security guards, *Williams v. State*, No. 05-02-01185-CR, 2003 WL 1958026, at *1 (Tex. App.—Dallas 2003, no pet.), and loss prevention officers, *Guiton v. State*, No. 05-02-01739-CR, 2004 WL 308441, at *1 (Tex. App.—Dallas 2004, no pet.).

Appellant points to *Byrd v. State* as authority for the proposition that proof of an owner who is different from the owner alleged in the charging instrument results in the evidence being legally insufficient to support a conviction. *See Byrd*, 336 S.W.3d at 258. However, the facts in *Byrd* are distinguishable from the present case. In that case, the Court of Criminal Appeals concluded the evidence was insufficient where the indictment, charging the defendant with theft from a local store, accused him of stealing from a "Mike Morales," but "Mike Morales" was never referred to at trial, nor did any witness testify to a connection between "Mike Morales" and the store from which property was stolen. *Id.* at 245. In the record before us, there is undisputed evidence Newell was working as a security guard for the Bank at the time of the robbery.

After reviewing all of the evidence under the appropriate standard of review, we conclude the evidence is sufficient to support appellant's capital murder conviction. Consequently, we decide against appellant on his first issue.

### III. FAILURE TO GIVE JURY INSTRUCTION ON LESSER CHARGE

In his second issue, appellant contends the trial court erred in overruling his objection to the jury charge and his request to include in the charge the lesser included offense of manslaughter.

#### A. *Standard of Review*

The trial court's decision to submit or deny a lesser included offense instruction is reviewed for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004) (holding trial court "did not abuse its discretion" in finding there was no evidence to support lesser included offense instruction); see also *Penaloza v. State*, 349 S.W.3d 709, 711

–9–

(Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). An abuse of discretion occurs where the trial court's decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *Penaloza*, 349 S.W.3d at 711.

### B. Applicable Law

"All alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Appellate review of alleged jury charge error calls for a two-step process. *Id.* We must first decide whether the jury instruction was erroneous. *Id.* Second, if error occurred, we must then analyze the error for harm. *Id.*

The existence and degree of harm must be reviewed "in light of the entire charge, the state of the evidence, the argument of counsel, and any other relevant information revealed by the record." *Vasquez v. State*, 389 S.W.3d 361, 370 (Tex. Crim. App. 2012) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). The appellant must suffer actual harm, not merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012). Neither the State nor the appellant has the burden to prove harm. *See Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008).

An offense is a lesser included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09. Reviewing potential jury charge error requires a two-step analysis: "(1) Is the requested charge for a lesser included offense of the charged offense? (2) Is there trial evidence that supports giving the instruction to the jury?" *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011) (citing *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007)).

The first step inquires whether the lesser included offense "is included within the proof necessary to establish the offense charged." *Rice*, 333 S.W.3d at 144. This is a question of law that is independent of the evidence produced at trial. *Id.*

The second step is a question of fact and is based on the evidence presented at trial. *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim. App. 2012). This step requires the reviewing court to determine whether "there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Rice*, 333 S.W.3d at 145 (citing *Guzman v. State*, 188 S.W.3d 185, 188-89 (Tex. Crim. App. 2006) and *Hall*, 225 S.W.3d at 536). This evidence must show the lesser included offense is a "valid, rational alternative to the charged offense." *Id.* Moreover, it "is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), *cert. denied*, 523 U.S. 1079 (1998).

In determining the question of fact under the second step, we consider all of the evidence actually presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005). In this review, "we cannot consider 'whether the evidence is credible, controverted, or in conflict with other evidence.'" *Isaac v. State*, 167 S.W.3d 469, 475 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (quoting *Hall*, 158 S.W.3d at 473). Satisfying the second step requires more than mere speculation; "it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos*, 382 S.W.3d at 385.

## C. *Application of the Law to the Facts*

Appellant asserts specifically the record demonstrates "evidence that suggests or supports that [appellant's] act of killing Newell was reckless and not intentional and the jury was not

given the opportunity to convict [appellant] of the lesser offense." Further, appellant argues, since a proper objection was raised at trial, "reversal is required if the error is reasonably expected to harm the defendant."

The State disputes the evidence showed appellant did not have the specific intent to commit murder. Rather, the State argues the evidence as a whole "does not support a rational inference that [a]ppellant was consciously disregarding the risk of death that his conduct created."

As discussed above, a person commits murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1)-(2). A person commits capital murder if he commits murder under Section 19.02 and intentionally commits a murder in the course of committing or attempting to commit a burglary or robbery. TEX. PENAL CODE ANN. § 19.03(a)(2). Finally, a person commits manslaughter "if he recklessly causes the death of an individual." TEX. PENAL CODE ANN. § 19.04(a).

The State concedes manslaughter is a lesser-included offense of the charged offense of capital murder. *See Mathis v. State*, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002) (citing *Cardenas v. State*, 30 S.W.3d 384, 392-93 (Tex. Crim. App. 2000)). Therefore, we examine whether there is some evidence that would permit a rational jury to find appellant guilty of only manslaughter. *See Rice*, 333 S.W.3d at 145.

Appellant asserts given the "evidence and circumstances surrounding the [a]ppellant's strange behavior and the impaired condition of his mind, the jury could have found that Newell was inadvertently shot during the struggle for the gun." Additionally, appellant argues his "drug induced psychotic behavior coupled with the struggle for the gun as seen on the video" raised the

–12–

issue that he had acted recklessly, rather than intentionally. Citing the Texas Code of Criminal Procedure Art. 38.36, appellant urges the evidence of his impairment demonstrates "at the least, the [a]ppellant's confused state of mind at the time of the shooting." Appellant also asserts that his concern and worry when he asked Officer Thompson if he had in fact killed Newell could have allowed the jury to find Newell was inadvertently shot during the struggle for the gun.

On the other hand, the State argues the evidence as a whole does not support a rational inference that appellant consciously disregarded the risk of death created by his conduct. Specifically, it argues a manslaughter instruction is only required where there is some evidence that the gun discharged accidentally or the defendant only intended to frighten the complainant, and there was no evidence of either scenario in this case. According to the State:

> Rushing an armed security guard in a bank, wrestling to get his firearm, firing the gun multiple times at him, and fleeing the scene does not constitute evidence upon which a jury could rationally find that Appellant's actions were merely reckless.

Though the State concedes the evidence may show appellant's "slight confusion," it argues the evidence does not affirmatively show appellant lacked the requisite intent to kill Newell. The State also asserts appellant's concern over whether he killed Newell does not demonstrate he did not intend to kill Newell.

The record shows appellant fired at least two shots at Newell and another one at Bank employee Luciana Sifflet. The record also shows appellant was the initial aggressor in the fight with Newell. Appellant does not dispute either point. Instead, he cites evidence of appellant's confused state of mind, the struggle for the gun, and noting Newell had appellant in a "bear hug" at one point as showing Newell could have been inadvertently shot during the struggle for the gun. Appellant also suggests the evidence supports the "probability" that Newell actually fired

–13–

the first shot since, on Newell's recorded 911 call, he could be heard telling appellant several times to not move and stay inside the Bank.

To raise the issue of manslaughter, "there must be evidence of a lack of intent to kill and evidence that the accused acted recklessly while ignoring a known risk." *Arnold v. State*, 234 S.W.3d 664, 672 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Munoz v State*, 932 S.W.2d 242, 245 (Tex. App.—Texarkana 1996, no pet.). In Texas, "courts have typically found that a manslaughter instruction was required based on some evidence that the gun discharged accidentally or that the defendant intended only to frighten the complainant." *Id.* (citing *Trujillo v. State*, 227 S.W.3d 164 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Appellant does not contend either of these situations are shown in the record.

The Texas Court of Criminal Appeals was presented with an analogous case, where the defendant claimed he was under the influence of alcohol and did not intend to kill the victim. *Cavazos*, 382 S.W.3d at 385. However, the court stated, "Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene...and later telling a friend 'I didn't mean to shoot anyone' does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots." *Id.* In that case, the court concluded there was no evidence "directly germane" to appellant's alleged recklessness. *Id.* Likewise, in the case before us, appellant has failed to offer any affirmative evidence to raise the issue of appellant's recklessness. *See id.*

In our review, we must consider the entire record and cannot examine evidence in a vacuum. *Godsey v. State*, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986) (en banc). Given the record in this case, the evidence highlighted by appellant; that is, his struggle over the gun, his confused state of mind, and his concern over whether he had killed Newell, does not constitute evidence upon which a jury could rationally find appellant's actions were merely reckless. *See Rice*, 333 S.W.3d at 145.

–14–

We conclude the trial court did not err by denying appellant's request for this instruction.

*See id*.  As a result, we decide against appellant on his second issue.

## IV. CONCLUSION

We decide against appellant on his two issues and affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

120842F.U05

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

COURTLAND WAYNE KING, Appellant

No. 05-12-00842-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas
Trial Court Cause No. F11-59371-U.
Opinion delivered by Justice Lang.   Justices FitzGerald and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of January, 2014.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE