**Joshua William LAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–10–00228–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted: Dec. 9, 2011.

Decided: Jan. 24, 2012.

Christian T. Souza, Dallas, for appellant.

Noble D. Walker, Dist. Atty., Marcin L. Zakrocki, Asst. Dist. Atty., Greenville, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice MOSELEY.

Joshua William Lay did not dispute that he tucked a nine-millimeter pistol into his pocket, pedaled his bicycle to Darryl Dwane Feggett's apartment, and shot Feggett four times, killing him. Rather, he disputed the motives for his actions. A jury convicted Lay of murder and sentenced him to thirty years' imprisonment. On appeal, Lay complains that the evidence was insufficient to establish that he intentionally or knowingly killed Feggett and contends that the trial court erred in refusing to submit instructions to the jury concerning the lesser-included offense of manslaughter and on self-defense. We affirm the judgment of the trial court because we find the evidence sufficient to establish the requisite *mens rea* for murder, hold the inclusion of manslaughter as a lesser-included offense was unwarranted, and conclude that Lay was not entitled to an instruction on self-defense.

## I. Sufficient Evidence Established that Lay Intentionally or Knowingly Killed Feggett

### A. Standard of Review

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of murder beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App.2010) (4–1–4 decision) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Hartsfield v. State,* 305 S.W.3d 859, 863 (Tex.App.-Texarkana 2010, pet. ref'd) (citing *Clayton v. State,* 235 S.W.3d 772, 778

(Tex.Crim.App.2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App.2007) (citing *Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* In this case, Lay committed murder if he intentionally or knowingly caused Feggett's death. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011).

## B. The Record

Feggett's neighbor at the Greentree apartment complex, Juan Davis, witnessed Feggett, Feggett's girlfriend, and Lay "laughing and joking" outside the convenience store. Lay had just met Feggett and felt that they could be friends. Lay accepted an invitation from Feggett to attend a cookout at Feggett's apartment and gave Feggett a $100.00 bill to pay for groceries for the cookout. Feggett and his girlfriend went to Wal–Mart to purchase groceries and instructed Lay to meet them at their apartment.

When Lay went to Feggett's apartment to attend the cookout, he discovered that Feggett had lied—there was no cookout to attend. Incensed, Lay demanded the return of his money. Feggett (who, unbeknownst to Lay, was a drug addict) refused to return the money, became belligerent, held a knife to Lay's throat, and demanded that Lay leave.

Davis was socializing that evening with his neighbor, Quenten Mays, on the Greentree apartment grounds when they witnessed a "mad," "irritated" Lay exit Feggett's apartment. Lay told Davis, "I'm going to kill him," said to Mays that "somebody's going to die," and then "took off" "on his bike." Apartment resident Andre Smith spoke with Feggett afterward and related that Feggett "was pretty upset, like he was scared for his life." Smith also told the jury that Feggett had said, "I'm being threatened. Somebody's going to hurt me."

Lay angrily pedaled back to his rental home. He stewed over the altercation, grabbed his friend's gun, rode his bicycle back to Feggett's apartment, and confronted him about the previous argument and the theft of his money. Lay said that he "just wanted to make [Feggett] feel how I felt." Lay offered the explanation that he became afraid when Feggett walked toward him and reached in his pocket, whereupon Lay drew the pistol, shot Feggett, and ran. Lay admitted that Feggett had no weapon in his hands at the time he was shot.

Davis heard gunshots at the apartment complex and Smith witnessed the shooting. Smith testified that Feggett did not have a knife and did not move toward Feggett before the shooting began. According to Smith, the two were "just talking" when Feggett was shot. Davis ran toward the commotion and "saw [Lay] cutting across the top balcony going down the stairs." Mays witnessed Lay "running across the

parking lot." Davis "held [Feggett] as he took his last breaths."

Officer Phillip Spencer received a tip as to the location of Lay's home and found him asleep in his bedroom. A consensual search of the home revealed "an empty 9 millimeter pistol box and a box of 9 millimeter rounds missing a few rounds from the box." The pistol was found hidden in the attic, and a bicycle matching the description given by witnesses was located in the garage. Lay was taken to the police department for questioning.

Detective Felicia White, who interviewed Lay testified:

> to my understanding ... they had a confrontation earlier, ... the victim had drawn a knife on him. They had an altercation. The Defendant left the area, rode home to Anderson Street, got a gun, came back to Greentree Apartments, confronted the victim and said that he wanted him to make him feel like he did.

### C. Analysis

 Lay contends that the evidence was insufficient to establish the intentional or knowing *mens rea* element of murder. A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2011). Whether Lay possessed the intent to kill was a question of fact for the jury to determine. *Brown v. State,* 122 S.W.3d 794, 800 (Tex.Crim.App.2003). In determining whether intent to kill was proven, the jury can use its collective common sense and may apply common knowledge and experience. *See Rodriguez v. State,* 90 S.W.3d 340, 355 (Tex.App.-El Paso 2001, pet. ref'd). The jury may infer the intent to kill from any evidence that it believes proves the existence of that intent. *Brown,* 122 S.W.3d at 800. Intent can be inferred from such circumstantial evidence as the person's acts, words, and conduct because "[o]ne's acts are generally reliable circumstantial evidence of one's intent." *Laster v. State,* 275 S.W.3d 512, 524 (Tex.Crim.App.2009); *Guevara v. State,* 152 S.W.3d 45, 50 (Tex.Crim.App. 2004). The jury may also infer intent to kill from the defendant's use of a deadly weapon, such as a gun, unless it would be unreasonable to infer that death or serious bodily injury could result from the particular use of the weapon. *Brown,* 122 S.W.3d at 800–01; *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996).

 The jury heard that Lay became angry at Feggett. Davis and Mays both testified that Lay said he was going to kill Feggett. Lay pedaled a bicycle to his home, retrieved a gun, and returned on the bicycle to Feggett's apartment, maintaining that his intention was to make Feggett feel how he had made Lay feel when Feggett had placed a knife at his throat. Smith testified the two were just talking when Lay drew his deadly weapon and shot Feggett. Lay ran after the shooting and hid the pistol in his attic.

Viewing the evidence in a light most favorable to the verdict, we find that a rational jury could have found beyond a reasonable doubt that Lay intentionally or knowingly killed Feggett. We overrule Lay's legal sufficiency challenge.

### II. Trial Court Was Not Required to Submit Manslaughter as a Lesser-Included Offense

 Lay argues that the trial court erred in denying his request to include manslaughter in the jury charge as a lesser-included offense. The Texas Court of Criminal Appeals has implemented a "two-prong test to determine whether a charge

on a lesser-included offense should be given." *McKinney v. State,* 207 S.W.3d 366, 370 (Tex.Crim.App.2006). A party is entitled to such a charge when (1) "the offense is a lesser-included offense of the offense charged" in the indictment, and (2) the record includes some evidence to permit a rational jury to find that if the defendant was guilty, he was guilty only of the lesser offense, but not guilty of the greater. *Id.; Guzman v. State,* 188 S.W.3d 185, 188 (Tex.Crim.App.2006); *Salinas v. State,* 163 S.W.3d 734, 741 (Tex.Crim.App.2005); *Wesbrook v. State,* 29 S.W.3d 103, 113 (Tex.Crim.App.2000). Manslaughter is a type of homicide which requires the perpetrator to possess a reckless state of mind which prompts the prohibited act. TEX. PENAL CODE ANN. § 19.04 (West 2011). A person acts recklessly when he is aware of, but consciously disregards, a substantial and unjustifiable risk. TEX. PENAL CODE ANN. § 6.03(c) (West 2011). Manslaughter is a lesser-included offense of murder. *Moore v. State,* 969 S.W.2d 4, 9 (Tex.Crim. App.1998); *see* TEX.CODE CRIM. PROC. ANN. art. 37.09(3) (West 2006). Thus, we focus on the second prong of the test.

■ Lay argues that he did not have the intention to kill Feggett, but that he only "wanted to obtain an apology from" Feggett, and wanted him to "feel what it felt like to be threatened with a deadly weapon." [1] This is the sole evidence that it was not Lay's intention to kill Feggett. "[T]he act of pointing a loaded gun at someone and shooting it toward that person at close range demonstrates an intent to kill." *Ex parte Thompson,* 179 S.W.3d 549, 556 n. 18 (Tex.Crim.App.2005). Lay

was indicted and tried for using a firearm to slay Feggett. A firearm is a deadly weapon per se. *Stewart v. State,* 532 S.W.2d 349, 350 (Tex.Crim.App.1976). When a deadly weapon per se is used in a deadly manner and death results, there is no need to give a charge of a lesser-included offense even though the defendant testified he did not intend to kill the victim. *Womble v. State,* 618 S.W.2d 59, 65 (Tex.Crim.App. [Panel Op.] 1981) (defendant not entitled to charge on aggravated assault as lesser-included offense). Lay's "denial that he intended to kill the victim does not, of itself, raise the issue of manslaughter." *Munoz v. State,* 932 S.W.2d 242, 245 (Tex.App.-Texarkana 1996, no pet.). "To raise the issue of manslaughter, there must be evidence of a lack of intent to kill *and* evidence that [the defendant] acted recklessly while ignoring a known risk." *Id.*

We do not believe there is evidence that Lay acted recklessly while ignoring a known risk. Lay left Feggett's residence, rode his bicycle to his own neighborhood where he obtained a gun, returned to Feggett's home, aimed the gun at Feggett, and shot him four times. This is not evidence of reckless behavior. Moreover, the statements that Lay made to Davis and Mays, together with Lay's admission that Feggett had no weapon in his hands at the time he was shot, remained uncontested. The physical evidence shows that Feggett was shot four times from close range with one of the four bullets striking his forehead. The evidence shows a deliberate and voluntary act, and there is no dispute that when Lay drew the weapon, he in-

---

1. Lay also argues that the following facts also indicate reckless, rather than intentional or knowing acts: Lay closed his eyes, did not use a high-powered weapon, and was easily identifiable from tattoos and the unique bicycle he rode. He states that "a person who commits a murder might practice using the weapon, use accomplices, shoot witnesses, and have a motorized vehicle available for a quick and inconspicuous escape, or steal one." These facts do not indicate reckless, as opposed to intentional or knowing acts. Rather, they simply emphasize that the murder was not committed by a stealthy criminal.

tended to use it. Lay's testimony that he did not intend to kill contained no evidence of a reckless state of mind and there was no other evidence of that mindset. Therefore, we find there was no evidence in the record from which a rational trier of fact could determine that Lay was guilty only of manslaughter.

We overrule this point of error.

## III. Lay Was Not Entitled to an Instruction on Self–Defense

Lay complains that the trial court erred in refusing to instruct the jury on the issue of self-defense. After relating the facts of the shooting, White testified, "I don't think that's self-defense," and told the jury that Lay was unlawfully carrying a weapon.

■ Under Section 9.31 of the Texas Penal Code, "a person is justified in using force against another when and to the degree [he] reasonably believes the force is immediately necessary to protect [himself] against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (West 2011). But "[t]he use of force against another is not justified ... if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was" unlawfully carrying a weapon under Section 46.02. TEX. PENAL CODE ANN. § 9.31(b)(5)(A) (West 2011). "A person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun ... if the person is not: (1) on the person's own premises or premises under the person's control." TEX. PENAL CODE ANN. § 46.02(a)(1) (West Supp. 2011).

■ A defendant bears the burden of production of some evidence supporting the justification of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex.Crim.App.

2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Crim.App.1991); *Dyson v. State*, 672 S.W.2d 460, 463 (Tex.Crim.App.1984). Once a defensive issue is raised by the evidence, a defendant "has the right to an instruction ... whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense." *Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App. 1996).

In his video-recorded interview with White, Lay recounted the prior altercation in which Feggett threatened Lay by placing a knife at his throat. Lay stated that he became afraid for his life and only drew his gun during the final altercation after Feggett gave him a crazed look, came toward him, and reached in his pocket. A "folding lock-blade knife" less than three inches long was recovered from Feggett's pocket by officers after his death. Lay described Feggett's demeanor as violent. Feggett was known to have a problem with drugs. He was also previously involved in "disturbances in family violence-type situations." His autopsy revealed the presence of cocaine and a blood alcohol level of .12. "The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge." *Dyson*, 672 S.W.2d at 463. Also, Smith testified he had seen Feggett pacing angrily while "saying 'f' this' and I'm going to go hurt somebody."

■ However, when the evidence, viewed in the light most favorable to the defendant, establishes as a matter of law that force is not justified in self-defense, no self-defense issue is required. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex.Crim.App. 2001); *Weatherall v. State*, No. 06–09–00095–CR, 2009 WL 3349039, at *2 (Tex. App.-Texarkana Oct. 20, 2009, no pet.) (mem. op., not designated for publica-

tion);[2] *Williams v. State*, 35 S.W.3d 783, 786 (Tex.App.-Beaumont 2001, pet. ref'd) (citing *Dyson*, 672 S.W.2d at 464–65).

The undisputed evidence was that after the first altercation, Lay returned to his home, took possession of his friend's gun, returned to Feggett's apartment complex, and confronted Feggett, seeking "to convince [Feggett] to acknowledge wrongdoing in swindling money from" him. Because Lay sought a discussion concerning his differences with Feggett while carrying his friend's gun upon the apartment complex premises in violation of Section 46.02 of the Texas Penal Code, he was not entitled to an instruction on the issue of self-defense as a matter of law. Therefore, the trial court did not err in refusing to include the instruction.

Lay's last point of error is overruled.

## IV. Conclusion

We affirm the trial court's judgment.

---

**2.** Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex.App.-Amarillo 2003, pet. ref'd).