

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-12-00382-CR

---

PAUL DAVID GILLETTE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 62,169-A, Honorable Dan L. Schaap, Presiding

---

November 13, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Paul David Gillette appeals his conviction for murdering his wife. Four issues pend for our review. They involve the sufficiency of the evidence underlying the verdict, the omission of purported lesser included offenses, amendment of the indictment, and the assessment of attorney's fees. The latter is sustained, while the others are overruled.

*Backgound*

The accusation arose from appellant, a former wrestler, confronting his wife of lesser physique by the garage, slamming her onto the ground, falling on top of her three times, applying wrestling holds around her head and neck to stop her from fighting, striking her in the chest area, dragging her into the garage and over a trailer after she stopped breathing, and loading her into the family SUV. The two were involved in a divorce, and appellant wanted to keep the asset which provided the family a large portion of its income. Appellant's wife, Sherri, died, and a jury convicted him of murder.

*Sufficiency of the Evidence*

Appellant was indicted for intentionally or knowingly killing his wife Sherri. Allegedly, the evidence failed to show that he had the requisite *mens rea* when he killed her. We disagree.

The pertinent standard of review is that discussed in *Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010). We apply it here.

A person intentionally causes the death of another when it is his conscious objective or desire to cause the death. TEX. PENAL CODE ANN. § 6.03(a) (West 2011). He knowingly murders someone when he is aware that his conduct is reasonably certain to cause the death. *Id.* § 6.03(b). And because few defendants admit that they had the requisite *mens rea* to murder, a jury is free to assess whether the accused had the requisite mindset by considering the tenor of his words and conduct. *Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

The following evidence appears of record. Appellant and Sherri were in the process of a contentious divorce. Law enforcement officers had been called to their

2

home several previous times to resolve verbal altercations. Sherri sought to obtain permanent control of an insurance agency that constituted the primary source of their joint income. Appellant had declared bankruptcy, and the success of his proposed bankruptcy plan depended upon his control of the insurance agency. Furthermore, Sherri had been told by appellant that she would not acquire the agency.

On the night of Sherri's death, appellant had questioned one of his children about Sherri's whereabouts and grew angry because the child did not know. Sherri eventually returned from a date that evening and pulled into her driveway. At the time, she was on the phone with a female named Christine. The latter heard Sherri say, "Christine, help me" and "[h]e's here. He's not supposed to be here." Christine subsequently heard gurgling sounds which caused her to contact the sheriff's office.[1]

Deputies arriving at the scene found the door to the garage locked but heard thuds or bumping sounds coming from within it. Eventually they gained entry and found appellant sitting on the floor in the dark with his knees drawn up to his chest. In response to their question about Sherri's location, he directed them to the GMC Yukon parked in the garage. Appellant also uttered, "I've had enough" or something to the effect that he "couldn't take it anymore."

Sherri's body was found lying on the floor of the vehicle between the front and back seats. She was not breathing and had dried blood in and around her mouth. Efforts to resuscitate her proved fruitless. Additionally, bloodstains indicated that she had been dragged from outside the garage into it and then across a trailer before being placed in the Yukon. Investigation also disclosed the presence of one of her boots

---

[1] Appellant and Sherri lived on the same property during their divorce. Sherri was living in the main house while appellant lived in a separate guesthouse. Both parties had the right of access to the garage, and both of them used a GMC Yukon for purposes of transporting their children.

3

under a staircase on the side of the driveway as well as clumps of her hair and pieces of her cellphone and jewelry near the staircase.

Sherri had suffered from manual strangulation and blunt force to her head and neck. Her injuries also included a tear to her vertebral artery and hemorrhages in her liver, mesentery, and pancreas. It was determined that significant force was needed to cause those injuries. Moreover, appellant not only had been a wrestler in high school and college but also outweighed his 147-pound wife by about 70 pounds.

Also found at the scene was a note purporting to represent Sherri's decision to relinquish the insurance agency to appellant. However, fingerprints on the document matched those of appellant, and the handwriting likened to his own too.

Appellant's calendar, which was also admitted into evidence, contained entries for the day preceding Sherri's death. They included reminders to him to "[f]ill up gas can and put in back and get MCHS," "stick jacket in car," and "clear walkway and leave my phone." A gas can had been found in the back of the Yukon, and evidence indicated that it had been placed there around the time Sherri died.

The foregoing evidence provided the jury basis upon which to rationally conclude, beyond reasonable doubt, that appellant not only planned to cause but also intentionally or knowingly caused the death of Sherri. That he may have claimed he acted in self-defense was a matter for the jury to consider. It was free to discredit his testimony, as it apparently did.

*Lesser Included Offenses*

Next, appellant argues that the trial court should have submitted the lesser included offenses of criminally negligent homicide and manslaughter to the jury.

4

According to appellant, his entitlement to such was triggered by his denial of any intent to kill Sherri, his effort to defend himself against her attack, and his failure to timely secure medical attention for her upon discovering she stopped breathing. We disagree.

One is entitled to an instruction on a lesser included offense if the lesser offense is included within the proof necessary to establish the greater offense and there is some evidence permitting a jury to *rationally* find that if the defendant is guilty, he is guilty only of the lesser offense. *Cavazos v. State,* 382 S.W.3d 377, 382 (Tex. Crim. App. 2012); *Rousseau v. State,* 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). That both manslaughter and criminally negligent homicide can be lesser included offenses of murder is beyond question. *Brown v. State,* 296 S.W.3d 371, 383 (Tex. App.— Beaumont 2009, pet. ref'd). So, we focus upon the second prong of the test. And, its presence can be shown via strong or weak evidence. *Cavazos v. State*, 382 S.W.3d at 384-85. But whether strong or weak, the evidence has to 1) affirmatively raise the lesser included offense, rebut or negate an element of the greater offense, and, most importantly, provide a "'valid, rational alternative' to the charged offense." *Id.* at 385. So, one cannot look at it in a vacuum but must consider it in context with the evidence as a whole. *Ramos v. State*, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993); *Nevarez v. State,* 270 S.W.3d 691, 694 (Tex. App.—Amarillo 2008, no pet.). With this said, we address the instruction about criminally negligent homicide first.

A person commits the aforementioned offense if he causes the death of an individual by criminal negligence. TEX. PENAL CODE ANN. § 19.05(a) (West 2011). As previously mentioned, the criminal negligence supposedly involved here was appellant's failure to obtain prompt medical attention for his wife once she stopped breathing. This

5

argument presupposes that Sherri was not dead at that point or that he had not killed her by then. And to satisfy this presupposition, appellant cites to the evidence that effort was made by law enforcement or medical personnel to resuscitate her and that medical personnel did not pronounce her dead until their resuscitory efforts ceased. Yet, missing is evidence that she began to breathe again after he stopped his assault upon her. Similarly absent is evidence of her exhibiting any brain activity or other indicia of life after being slammed to the ground, being constrained through the application of wrestling holds around her neck and head, having a 220-pound person fall three times upon her body, and suffering a blow to her chest or abdominal area administered by appellant.

That deputies or paramedics tried to resuscitate the body is laudable but no help to appellant. Nowhere does he cite us to evidence illustrating that she exhibited any type of life signs before, during, or after the administration of those efforts. Indeed, it is logical to infer that because she was no longer exhibiting life signs that efforts were made to resuscitate her. So, the acts undertaken by the paramedics is not evidence that she was alive at any time after appellant stopped beating Sherri.

Similarly inconsequential is appellant's allusion to the time those very same paramedics pronounced Sherri dead. Apparently, he would have us believe that the pronouncement of death by medical personnel somehow constitutes evidence that she was alive until that point. Nothing of record supports such speculation. Indeed, death occurs when one actually dies, not when someone formally pronounces the corpse dead. If this was not so, then we need only have medical personnel withhold pronouncing love ones dead to keep them alive; oh, if that could only be.

6

As for an instruction on manslaughter, one commits the offense if he recklessly causes the death of a person. TEX. PENAL CODE ANN. § 19.04(a) (West 2011). And a person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstance exists or the result will occur. *Id.* § 6.03(c).

The evidence purportedly entitling appellant to the foregoing instruction consisted of his denying any intent to kill Sherri and declaring that he was only trying to defend himself against her attack. Yet, we are told in *Lay v. State,* 359 S.W.3d 291 (Tex. App.—Texarkana 2012, no pet.) and *Nevarez v. State, supra,* that simply denying the existence of an intent to kill is not enough; there must also be evidence of recklessness. *Lay v. State,* 359 S.W.3d at 296; *Nevarez v. State,* 270 S.W.3d at 694-95. A 220-pound male wrestler 1) slamming a 147-pound female to the ground, 2) falling on her three times, 3) striking her in the abdomen, 4) placing her in wrestling holds involving the application of pressure to the head and neck, 5) dragging her bloodied body across concrete and a trailer, 6) stuffing her into an SUV that contained a can of gas, 7) writing a note purporting to evince his victim's intent to relinquish ownership of an asset he coveted, 8) previously declaring that she would not keep that particular asset, and 9) uttering "I've had enough" when found by law enforcement personnel does not constitute affirmative evidence that the actor simply disregarded a substantial and unjustifiable risk that death will or could result from his conduct. It does not negate, but rather fosters, the presence of an intent to kill. Nor does it present a valid and rational alternative to murder, as required by *Cavazos.*

*Amended Indictment*

Appellant next claims the indictment was improperly amended. We overrule the issue because the matter was not preserved.

No one disputes that the indictment was amended. Nor do they deny that the face of the indictment was left unchanged; that is, no interlineation of the indictment was made to reflect the amendment. Yet, once the amendment was approved via court order, appellant did not complain about the omission until now. He merely asked if the trial would be postponed because of the change. His remaining silent below resulted in the waiver of the omission here. *See e.g.*, *Adams v. State*, 179 S.W.3d 161, 163 (Tex. App.—Amarillo 2005, no pet.) (noting that the failure to object to an amendment on the day of trial waives the complaint); *Lebo v. State*, 100 S.W.3d 417, 421 (Tex. App.—San Antonio 2002, pet. ref'd) (noting that while the defendant had no opportunity to object to the amended indictment before its amendment, he had ample time to object before trial commenced); *Hoitt v. State,* 30 S.W.3d 670, 674 (Tex. App.—Texarkana 2000, pet. dism'd, improvidently granted).

*Attorney's Fees*

Finally, appellant argues that it is error for the judgment to require him to pay attorney's fees because the record does not show that he had the ability to pay. The State concedes error on this issue. *See Mayer v. State,* 309 S.W.3d 552, 557 (Tex. Crim. App. 2010) (finding no error in the appellate court not remanding to the trial court and instead modifying the judgment when the record contained insufficient evidence of the defendant's ability to pay attorney's fees). Therefore, we sustain the complaint.

Accordingly, the judgment is modified to delete from it appellant's requirement to pay attorney's fees. As modified, the judgment is affirmed.


                                          Brian Quinn
                                          Chief Justice


Do not publish.