

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00139-CR

_____

DONNY JOE CURRY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1
Hunt County, Texas
Trial Court No. CR1301508

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

When Donny Joe Curry was subjected to a traffic stop by Commerce Police Officer Samantha Manrique, Curry had a consistent theme for why he refused to cooperate or provide more than his first name, why his vehicle had no rear lights, and why the vehicle displayed only homemade items in place of a proper license plate, registration sticker, and inspection sticker. Curry claimed to be sovereign and, therefore, not subject to the law or any governmental authority.

Manrique stopped Curry's blue Buick LeSabre after she noticed that the vehicle was being driven poorly and had no rear lights, proper license plate, or inspection sticker. Curry's refusal to exit his vehicle after numerous directions to do so led to several tasings and a struggle to place him in handcuffs. Following a bench trial, Curry was convicted of resisting arrest, sentenced to confinement in the Hunt County Jail for 275 days, and ordered to pay a $250.00 fine and court costs.

On appeal, Curry challenges the legal sufficiency of the evidence supporting his conviction. Because we find the evidence sufficient to establish the offense of resisting arrest, we affirm the trial court's judgment.

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found beyond a reasonable doubt the offense of resisting arrest. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Legal sufficiency of the evidence is measured by the elements of the

offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* By information, the State alleged and was required to prove that (1) Curry (2) intentionally (3) prevented or obstructed backup officer Mike Pehl, (4) a person Curry knew was a police officer, (5) from effecting his arrest, search, or transportation (6) by use of force against Pehl. *See* TEX. PENAL CODE ANN. § 38.03(a) (West 2011).

Manrique testified that Curry was asked, but refused, to provide her with his last name, driver's license, and proof of insurance.[1] As demonstrated by the video recording of his arrest, Curry's excuse for his refusal to provide the requested information was that he was a "free man." Based on Curry's response, Manrique believed that Curry belonged to the sovereign citizen movement. As explained by Pehl, sovereign citizens "believe in a government . . . that derives its strength and its rights from . . . common law, which is totally different from . . . the law of the land

---

[1]In companion cases 06-14-00139-CR through 06-14-00142-CR, Curry appeals from convictions all prosecuted against Curry as a result of the traffic stop, each resulting in an appeal currently pending before this Court. Curry was charged with resisting arrest (our cause number 06-14-00139-CR), failure to maintain proof of financial responsibility (our cause number 06-14-00140-CR), failure to display/no motor vehicle inspection (our cause number 06-14-00141-CR), and failure to identify (our cause number 06-14-00142-CR). After a bench trial, he was found guilty on all charges. For the offense of resisting arrest, the trial court sentenced Curry to 275 days' confinement, assessed a $250.00 fine, ordered Curry to pay court costs, and gave him credit for eighty-two days of time served. For each of the remaining three offenses, the court fined him $250.00, gave him credit for eighty-two days of time served, which fully satisfied the fine, and assessed him court costs, but in the final judgments, there are handwritten notations that he was also sentenced to 275 days' confinement for each of the charges. Three of the appeals are being affirmed this day—two of which are being modified to delete the 275-day jail sentence—but, because no evidence shows that Curry was under arrest at any time before he failed to identify, the conviction for failure to identify is being reversed.

as established by the United States Constitution." Because Manrique's training had taught her that sovereign citizens could have a propensity for violence, she called Pehl and Steve Scott for backup.

Pehl approached Curry on the driver's side of his vehicle as Scott approached the passenger side. Although he was in plain clothes, Pehl displayed his badge and identified himself as a police officer. Pehl instructed Curry to step out of the vehicle, but Curry refused. Pehl testified that, as he opened the driver's side door, Curry reached down for a briefcase and said, "I want to show you something."[2] Believing that Curry was reaching for a gun, Pehl drew his firearm and ordered Curry out of the car. Both Pehl's testimony and the video recording of the arrest demonstrated that Pehl pulled on Curry's arm and exerted physical pressure on Curry to induce him to exit the vehicle. After Curry's continued resistance, Pehl tased him.

Despite Pehl's tasings, Curry "remain[ed] locked up on the steering wheel." Manrique testified that Pehl and Scott had to wrestle with Curry because he was "holding on to the steering wheel" and refused to exit the vehicle. The videotape of Curry's arrest demonstrated the struggle. Pehl testified that, once Curry was forcefully ejected from the vehicle, he grabbed Curry in the upper chest because his arms were "flailing out to his side." The videotape showed that Manrique cuffed one of Curry's wrists, but that Curry continued to struggle by pulling his arms apart as Pehl and Scott attempted to push his arms together so that his other wrist could be cuffed. Together, Pehl and Scott were finally able to secure Curry in handcuffs and place him in a patrol car.

Curry, who represented himself at trial, described his actions as "passive resistance." The trial court disagreed and found Curry guilty of resisting arrest.

---

[2]The briefcase did not contain a weapon.

Curry argues that the evidence at trial is insufficient to meet the elements of the offense because (1) he did not know he was under arrest, (2) he did not intentionally prevent or obstruct Pehl from effecting an arrest, and (3) the "passive resistance" he employed is insufficient to show use of force.

First, there is sufficient evidence that Pehl was effecting Curry's arrest. Curry complains that no one told him he was under arrest for the various traffic infractions he had committed. However, an announcement from a police officer that he is attempting to make an arrest is not a prerequisite to this crime. "Although it is necessary for the officer to have a pre-existing intent to arrest together with some action taken pursuant to that intent, the process is not dependent upon the officer verbalizing his intention to arrest." *Latham v. State*, 128 S.W.3d 325, 329 (Tex. App.—Tyler 2004, no pet.) (citing *White v. State*, 601 S.W.2d 364, 366 (Tex. Crim. App. [Panel Op.] 1980)). "[W]hether a person is under arrest is determined by asking if a reasonable person would have believed he was not free to leave in light of all the circumstances surrounding the incident." *Id.*

Here, Manrique testified that Curry committed arrestable offenses before Pehl's arrival. Curry refused, then vigorously resisted, Pehl's efforts to get him out of the car. After a struggle with Pehl and Scott, in which they attempted to bring Curry under control, Manrique was able to handcuff one of Curry's wrists. "From the moment the peace officer begins his efforts to gain control or physical restraint over the individual until the individual is restrained or controlled, the officer is considered to be 'effecting an arrest.'" *Id.* (citing *Bruno v. State*, 922 S.W.2d 292, 294 (Tex. App.—Amarillo 1996, no pet.)). We find that, at the very least, a reasonable person would

5

not have believed that he was free to leave after his first wrist was handcuffed.[3] By this point, it was clear that Pehl was effecting Curry's arrest.

Next, the evidence demonstrates that Curry used force against an officer. Even as Curry had handcuffs dangling from one wrist, he continued to resist Pehl's and Scott's efforts to secure him by spreading his arms apart so that his other wrist could not be handcuffed. Curry contends that his act of passive resistance does not equate to a use of force. "In applying section 38.03(a) of the Texas Penal Code, the essential inquiry is whether the actor has forcibly interfered with a peace officer's 'arrest' transaction or process to bring the actor under control." *Id.* (citing *Schrader v. State*, 753 S.W.2d 733, 735 (Tex. App.—Austin 1988, pet. ref'd)).

We have previously addressed and rejected a virtually identical argument regarding passive resistance by holding that a defendant's forceful pulling away from an officer's grasp is sufficient to establish the use of force against the officer. *Pumphrey v. State*, 245 S.W.3d 85, 91 (Tex. App.— Texarkana 2008, pet. ref'd). In *Pumphrey*, we reasoned,

> [T]he statute [] defines "resisting" arrest by using "force against" an officer or another. The ordinary meaning of "resist" does not require that the resistance be directed toward the person or force being resisted. To "resist" is to "exert oneself so as to counteract or defeat." MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 1060 (11th ed. 2006). Interpreting "force against" to require that force be directed toward the officer contradicts the ordinary meaning of the word "resist." In the absence of a statutory definition to the contrary, we believe the proper understanding of "against" in the context of "resisting arrest" allows for the use of force in opposition to, but not necessarily directed toward, the officer who is attempting to make an arrest. We conclude that "against," as used by Section 38.03 of the Texas Penal Code, does not require force directed at or toward the officer, but also is met with any force exerted in opposition to, but away from, the officer, such as a simple pulling away.

---

[3] "It is no defense to prosecution under [the resisting arrest statute] that the arrest or search was unlawful." TEX. PENAL CODE ANN. § 38.03(b) (West 2011).

6

*Id.* Likewise, we find that, by continuing to struggle with officers as they attempted to handcuff him, Curry interfered with a "peace officer's 'arrest' transaction or process to bring the actor under control." *Latham*, 128 S.W.3d at 329.

Curry further argues, "It is just as rational, if not more rational, that Appellant's physical actions were the result of the electrocution he suffered at the hands of Officer Pehl's Taser." Thus, he concludes that the evidence is insufficient to show that he acted with the intent to prevent or obstruct Pehl from arresting him. We disagree.

Intent can be inferred from such circumstantial evidence as the person's acts and conduct because "[o]ne's acts are generally reliable circumstantial evidence of one's intent." *Lay v. State*, 359 S.W.3d 291, 295 (Tex. App.—Texarkana 2012, no pet.) (quoting *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009)). While Curry argues that his acts of resistance could have been the result of being tased, he testified at trial that his "arms were just like [a] rag doll" and that his body was "limp." Contrary to that, Pehl's and Scott's efforts to secure both of Curry's wrists in handcuffs are depicted in the videotape of his arrest.

The evidence demonstrated that Curry, through use of force, tried to keep Pehl and Scott from handcuffing him. This act of resistance came after (1) Curry had refused Pehl's commands to exit the vehicle, (2) Curry was tased several times, and (3) Curry was wrestled out of the vehicle. As the fact-finder, the trial court was free to determine that Curry's act of spreading his arms apart to prevent being handcuffed, which obstructed Pehl from effecting an arrest, was intentional.

7

Because we find that Curry's conviction is supported by legally sufficient evidence, we affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     April 8, 2015
Date Decided:       April 24, 2015

Do Not Publish