**Affirmed as Modified and Opinion Filed September 9, 2024**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

## No. 05-22-01238-CR

_____

**JUAN DANIEL YEPEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F20-24456-J**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Carlyle
Opinion by Justice Partida-Kipness

A jury convicted appellant Juan Daniel Yepez of first-degree murder, and the

trial court assessed punishment at thirty-five years' imprisonment. In a single issue

on appeal, Yepez contends the evidence is legally insufficient to support his murder

conviction and supports only a conviction for manslaughter. The State brings a

single cross-issue, asserting the judgment should be modified to: (1) reflect Yepez

entered a plea of "not guilty"; (2) reflect Yepez's punishment was assessed by the

judge; and (3) include an affirmative deadly-weapon finding. We sustain the State's

cross-issue and modify the judgment accordingly. We otherwise affirm the trial court's judgment.

## BACKGROUND

Yepez and the victim, Noah Hansen, were drug dealers and friends. Hansen lived with his girlfriend, Sarah Harris, at her house in Garland. On the evening of May 20, 2020, Hansen requested that Yepez return a backpack containing certain belongings Hansen had left in Yepez's vehicle. Hansen was unable to retrieve the backpack from Yepez that evening. Early the next morning, Yepez and his girlfriend Julie Hernandez showed up at Harris's residence in another vehicle. Hansen and Harris went outside, and Hansen began searching the vehicle for his belongings. Hansen was yelling at Yepez. Hernandez was upset and yelling loudly as well. Yepez then pushed past Harris and entered her house. He returned with a semi-automatic firearm and began making threats.

According to Harris, Yepez said "I'm not finna deal with all this. I'm just gonna solve it myself." Harris was scared and believed Yepez's threats. Hansen, however, said Yepez wasn't going to do anything because they were friends. When the driver of the vehicle they had arrived in sped off, Yepez and Hernandez were left behind. They began walking down the street. Hansen, concerned his friend might be picked up by police for visibly carrying a firearm, decided to drive down the street to pick up Yepez and Hernandez and take them home. Harris was scared and did not want Hansen to go, but ultimately acquiesced and rode along in the front passenger

–2–

seat. Hansen caught up with Yepez and Hernandez and convinced them to get in the rear passenger seat. They then drove to the Orchard Hills convenience store to get some drinks.

During this time, Yepez's and Hansen's argument de-escalated. However, when the parties arrived at the Orchard Hills convenience store, Yepez and Hansen began arguing again. Yepez again threatened Hansen. Around the time they were leaving the parking lot, Harris asked Yepez and Hernandez to exit the vehicle, and Yepez became very angry. Yepez told Hansen "I'm gonna shoot you" and "I'm just gonna fucking kill you." Hansen then began "jerking" the car by alternately accelerating and braking, hoping Yepez would exit the vehicle. This made Yepez more furious.

Yepez then exited the car. He stated, "You know what?" and raised the gun he was still carrying. Hernandez, who was about to exit the vehicle, laid down on the backseat and shouted "Go, go, go!" to Hansen when she noticed Yepez raising the gun. As Hansen began driving away, Yepez ran up toward the passenger side and fired a shot through the front passenger window. The bullet fragmented, with numerous fragments striking Hansen in the head, killing him. Other bullet fragments or window shrapnel struck and injured Harris. Yepez then fled the scene on foot, stopping briefly to hide the firearm under a vehicle parked at a nearby auto shop. Yepez was arrested several hours later and charged with murder.

At trial, the State offered testimony from Harris and a local eyewitness. The State also tendered surveillance videos which captured the incident and Yepez's subsequent flight. Police and forensic investigators testified regarding the crime scene and the evidence recovered. A medical examiner testified as to Hansen's injuries and concluded he died as a result of the bullet wounds to his head. Yepez's defense consisted primarily of cross-examination of the State's witnesses. Yepez did not testify.

The jury found Yepez guilty of murder as charged in the indictment. The trial court assessed punishment at thirty-five years' imprisonment. This appeal followed.

**STANDARD OF REVIEW**

In determining whether the evidence is sufficient to support a conviction, we must consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979)). When facts support conflicting inferences, the reviewing court must presume the trier of fact resolved

any such conflicts in favor of the prosecution and must defer to that resolution. *Id.* (citations omitted).

## ANALYSIS

**I.     Legally Sufficient Evidence Supports the Murder Conviction**

In his sole issue, Yepez contends the evidence is legally insufficient to support his conviction for murder. Yepez contends the State did not prove he intentionally or knowingly caused Hansen's death. Yepez asks that we reverse and acquit him of murder, or alternatively, reverse and convict him of manslaughter. We conclude the evidence is legally sufficient to support Yepez's murder conviction.

### A.     Murder

Relevant here, a person commits murder if he: (1) intentionally or knowingly causes the death of an individual; or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1)-(2). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct, when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.*

The State may prove a defendant's criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences therefrom. *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). Whether a defendant possessed the intent to kill is a question of fact for the jury. *See Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). Direct evidence of the requisite intent is not required; a jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, the method of committing the crime, and from the nature of wounds inflicted on the victims. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (quoting *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999)). A jury may also infer knowledge from such evidence. *Id.* We examine the entire record to see whether it contains evidence of the requisite intent. *Id.*

The specific intent to kill may be inferred from the use of a deadly weapon. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012). A firearm is a "deadly weapon" under the Penal Code. TEX. PENAL CODE § 1.07(a)(17)(A). If a deadly weapon is used in deadly manner, the inference is almost conclusive that the actor intended to kill. *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986). Furthermore, "[i]t is both a common-sense inference and an appellate presumption that a person intends the natural consequences of his acts…and that the act of pointing a loaded gun at someone and shooting it toward that person at close range demonstrates an intent to kill." *Balderas*, 517 S.W.3d at 766–67 (citations omitted).

A defendant's acts after the commission of a crime, such as fleeing the scene, not seeking medical attention for the victim, or not reporting the shooting, may be evidence of specific intent to kill. *Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994); *Evans v. State*, 440 S.W.3d 107, 113 (Tex. App.—Waco 2013, pet. ref'd); *see also Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (a fact-finder may draw an inference of guilt from the circumstance of flight).

## B.    Application to the facts

Here, the evidence established that on the morning of May 21, 2020, Yepez and Hansen were arguing outside of Harris's house over the location and content of Hansen's backpack and belongings. Harris testified Yepez pushed past her, entered her house, and returned brandishing a firearm. Yepez then began threatening Hansen, saying "I'm not finna deal with all this. I'm just gonna solve it myself." Harris stated she was terrified and knew Yepez meant his threats. The argument temporarily de-escalated, but when the parties arrived at the Orchard Hills convenience store shortly thereafter, the argument re-intensified. Yepez again threatened Hansen. Yepez became very angry after Harris asked Yepez and Hernandez to exit the vehicle. Yepez told Hansen "I'm gonna shoot you" and "I'm just gonna fucking kill you." Yepez became more furious when Hansen began "jerking" the vehicle. Yepez then exited the car. He stated, "You know what?" and raised the gun. Hernandez laid down on the backseat and shouted "Go, go, go!" to Hansen when she noticed Yepez raising the gun. As Hansen began driving away,

Yepez ran up toward the passenger side and fired a shot through the passenger window, killing Hansen. Yepez fled the scene and hid the murder weapon. Video surveillance footage from a nearby gas station corroborated Harris's testimony and shows Yepez exit the car, then run up to the passenger side with the firearm pointed toward the passenger window. Surveillance video and eyewitness testimony also showed Yepez fleeing the scene and hiding the murder weapon.

The foregoing evidence is legally sufficient to support Yepez intentionally or knowingly caused Hansen's death. Yepez repeatedly threatened to harm (and kill) Hansen, then made good on his threats by pointing his firearm at Hansen and shooting him at short range. Pointing and shooting a firearm at a person in such circumstances demonstrates the intent to kill. *See Balderas*, 517 S.W.3d at 766–67; *Lay v. State*, 359 S.W.3d 291, 295 (Tex. App.—Texarkana 2012, no pet.) (evidence legally sufficient to show defendant intentionally or knowingly killed the victim, where defendant had previously become angry with victim, threatened to kill him, then retrieved a firearm from his home and returned and shot victim; evidence did not support that defendant's actions were merely reckless or that he was entitled to an instruction on manslaughter); *see also Flanagan v. State*, 675 S.W.2d 734, 745 (Tex. Crim. App. 1982) (opinion on reh'g) (evidence supported that defendant had intent to kill victim, where defendant pointed and fired shotgun directly at victim from fifty feet away, notwithstanding that victim was not struck).

Furthermore, Yepez fled the scene, and there is no indication he sought medical attention for Hansen or reported the shooting. These circumstances are of the type from which the jury could have inferred Yepez possessed a specific intent to kill Hansen. *See Wilkerson*, 881 S.W.2d at 324 (fact that the defendant left the scene of the robbery without seeking medical attention for the man he shot was evidence of specific intent to kill); *Evans*, 440 S.W.3d at 113 (finding sufficient evidence of specific intent to kill when defendant did not seek medical help, did not report the shooting, and did not show remorse); *Mitchell v. State*, No. 07-20-00026-CR, 2021 WL 4026982, at *4 (Tex. App.—Amarillo Sept. 3, 2021, pet. ref'd) (mem. op., not designated for publication) (even though appellant knew he had shot victim, he did not seek medical attention for him but instead fled the scene and did not report the shooting).

The evidence alternatively supports that Yepez intended to cause serious bodily injury to Hansen and committed an act—firing a gun at Hansen—clearly dangerous to human life that caused Hansen's death. *Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999) ("[F]iring a gun in the direction of an individual is an act clearly dangerous to human life.").

Yepez suggests the evidence is legally insufficient to support a murder conviction because there was no evidence of deliberation or premeditation. However, deliberation and premeditation are not statutory elements of murder. TEX. PENAL CODE § 19.02(b)(1); *Rogers v. State*, 774 S.W.2d 247, 254 (Tex. Crim. App.

–9–

1989) (remarking that "deliberate" is not a statutory element of murder), *overruled on other grounds by Peek v. State*, 106 S.W.3d 72 (Tex. Crim. App. 2003); *Crane v. State*, 786 S.W.2d 338, 345 (Tex. Crim. App. 1990) (premeditation is not an element of murder).

Yepez also contends the evidence supports he had no intent to kill Hansen because, in response to Yepez's threats, Hansen remarked that Yepez was not going to do anything and would never hurt him because they were friends. While Yepez cites several U.S. Supreme Court cases generally addressing free speech and "true threats," he does not cite any authority suggesting the victim's disbelief of the threats is evidence of a lack of intent to kill. We have not located any authority supporting such a proposition. Regardless, even if Hansen's disbelief of Yepez's threats is some evidence of the lack of intent, there was significant contrary evidence, as discussed above. And, Harris certainly believed Yepez's threats. It was the jury's province to weigh the evidence and draw reasonable inferences therefrom. *Whatley*, 445 S.W.3d at 166. To the extent the facts supported conflicting inferences, we must presume the jury resolved any such conflicts in favor of the verdict. *Id.*

Finally, Yepez argues the fact he fired only one shot—despite that the gun held forty rounds—is evidence of a lack of intent to kill. We disagree. Firing a single shot does not demonstrate a lack of intent to kill. *Ayala v. State*, 267 S.W.3d 428, 433 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (the fact that appellant fired

–10–

the weapon only once and that the complainant sustained a single wound did not establish a lack of intent to kill in appellant's conviction for capital murder).

Considering all the evidence in the light most favorable to the verdict, a rational fact-finder could have found the essential elements of murder beyond a reasonable doubt. *See Whatley*, 445 S.W.3d at 166. We conclude the evidence is legally sufficient to support Yepez's murder conviction. We need not consider whether the evidence would have supported a manslaughter conviction. *See* TEX. R. APP. P. 47.1.[1] We overrule Yepez's sole issue.

## II. State's Cross-issue

In a single cross-issue, the State contends the judgment contains several inaccuracies and asks us to modify the judgment to: (1) reflect Yepez entered a plea of "not guilty"; (2) reflect Yepez's punishment was assessed by the judge; and (3) include an affirmative deadly-weapon finding. We agree with the State.

This Court may modify the trial court's judgment to make the record speak the truth when it has the necessary data and information to do so. *Bigley v. State*, 865 S.W. 2d 26, 31 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W. 2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd); TEX. R. APP. P. 43.2(b).

---

[1] We note the jury charge included an instruction on manslaughter and gave the jurors the opportunity to convict Yepez on this lesser offense. They declined to do so.

–11–

The record reflects Yepez entered a plea of "not guilty" in open court. However, the judgment shows a plea of "guilty." Accordingly, we modify the judgment to indicate a plea of "not guilty."

The judgment indicates the jury assessed punishment, but the record reflects the judge assessed punishment. We modify the judgment to indicate the judge assessed punishment.

Finally, the judgment omits a deadly-weapon finding. In a jury trial, an affirmative finding on use of a deadly weapon may be entered when the indictment specifically pleads use of a deadly weapon, and the jury verdict states the defendant is guilty "as charged in the indictment." *Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985). Here, the indictment alleged Yepez murdered Hansen by shooting him with a firearm, a deadly weapon. The jury found Yepez guilty of murder "as charged in the indictment." Thus, the record supports an affirmative finding on the use of a deadly weapon. We modify the judgment to include an affirmative finding on the use of a deadly weapon, a firearm. *See id.* We sustain the State's cross-issue.

## CONCLUSION

The evidence is legally sufficient to support Yepez's conviction for murder. We modify the judgment to indicate Yepez pleaded "not guilty," and that punishment was assessed by the judge. We further modify the judgment to include an affirmative finding on the use of a deadly weapon, a firearm.

–12–

As modified, we affirm the trial court's judgment.

/Robbie Partida-Kipness/

ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
221238F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JUAN DANIEL YEPEZ, Appellant

No. 05-22-01238-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas Trial Court Cause No. F20-24456-J. Opinion delivered by Justice Partida-Kipness. Justices Reichek and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Under "Plea to Offense," modify from "Guilty" to "Not Guilty."

Under "Punishment Assessed by," modify from "Jury" to "Judge."

Under "Findings on Deadly Weapon," modify from "N/A" to "Yes, a Firearm."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 9th day of September, 2024.